## COOK *vs.* WALKER.

30 519
96 148

1. To authorize a recovery for malicious prosecution in a civil proceed-
ing, the plaintiff must show affirmatively that the proceedings were
malicious and without probable cause, both concurring.

Case, in Harris Superior Court. Tried before Judge
WORRILL, April Term, 1860.

This was an action on the case brought by Elijah Cook,
against Thacker V. Walker, to recover damages alleged to
have been sustained by plaintiff, by the suing out a writ of
*ne exeat*, and seizing upon about 80 negroes of plaintiff's,
having a receiver appointed, etc.

Plaintiff opened his case and offered in evidence the bill
and proceedings in the equity case, in which the *ne exeat*
issued. Also, the *ne exeat* bond executed by plaintiff, with
Mary Walker as security, and the record of the Court of
Ordinary, appointing him administrator on the estate of said
Mary Cook, deceased, his wife, and his bond as administrator,
with said Mary Walker thereto.

Plaintiff further, amongst other things, offered to prove the
value of the estate of Mary Walker, his security, on his *ne
exeat* and administration bonds. This testimony the Court
refused, and counsel for plaintiff excepted.

Plaintiff having closed, counsel for defendant moved for a
non-suit, which the Court below granted, and counsel for
plaintiff excepted.

JONES & JONES; J. N. RAMSEY, for plaintiff in error.

WM. DOUGHERTY, *contra*.

*By the Court.*—LYON, J., delivering the opinion.

This was an action for malicious prosecution by the plain-
tiff against the defendant, on the following state of facts:
The plaintiff married a sister of the defendant, who was pos-
sessed of a large estate. On their marriage, they entered
into a marriage contract, in which Mrs. Cook's property was
conveyed to one of her brothers, in trust, for her sole use,

"with liberty" to the wife, "to sell and dispose of, and to give away, either by deed, will or otherwise, all or any part of the same as she may think proper; but in case she should die without children, or without making disposition of the property at her death, the property was to be divided among her mother, brothers and sisters." Mrs. Cook died subsequently, without children, and without making any disposition of her estate. The defendant administered on her estate and gave his mother-in-law as security on his administration bond, and claimed that his wife's estate belonged to him under the law of distribution. The brothers and sisters and the descendants of such of them as were deceased, filed their bill in equity in Harris Superior Court against Cook for discovery and distribution, and in that bill prayed a writ of *ne exeat* against Cook. This bill was sanctioned by Judge Iverson, the then Judge of the Superior Court of that county, and the writ of *ne ¹exeat* issued. Cook was arrested under the same, and gave bond, with Mary Walker, his mother-in-law, and the mother of the complainants, as his security, she having favored Cook in the contest for his wife's property. The surety was possessed of a large estate in her own right, and but for her relationship to the parties, would have been ample security on the bond. She was quite old, and the complainants, naturally expecting that the property she was possessed of would ultimately, and in the course of things, belong to them as her heirs-at-law, could not see how this gave them any security for the forthcoming of the property in litigation, for if the loss fell on the surety, it would have to be made good out of an estate that they very reasonably expected would be their own, and that thus they were indirectly sureties themselves for Cook. Under these circumstances and facts, complainants filed a supplemental bill, asking the Chancellor to compel Cook to give other security, which the Court, upon the hearing thereof, allowed.

To the bill so filed for distribution, the defendant therein, by counsel, demurred, and upon the hearing of that demurrer, the presiding Judge of the Superior Court overruled the demurrer, and ordered the defendant to answer. That decision was excepted to, and brought to this Court, and on the hearing this Court sustained the demurrer, holding that, under the unlimited power of disposition given the wife by

Cook *vs.* Walker.

the marriage settlement, the absolute fee was vested in her, and the limitation over was, in consequence, not good, and that on her death, the property vested in her husband *jus marite.* This is the whole ground of the accusation. On the trial, the proof was, that the property had been taken possession of by the sheriff under the *ne exeat* and kept some thirty or forty days; that some of the property had been sold and brought fair prices; that the services of the negroes were worth $800 00 or $1,000 00 during the time; that the fees and commissions allowed to the receiver from sale and attention to the property amounted to some $500 00 or $600 00; that the counsel fees paid out by Cook in that litigation must have been some $6000 00 or $7000 00—at least it was worth so much—and by William Dougherty, one of the counsel for the complainants in the bill, that he had been practicing law some twenty-seven years, and that he had advised the complainants that the property was theirs, and all the proceedings that were taken. The plaintiff offered to put in evidence his administration bond on his late wife's estate, with Mary Walker as surety on same, and the value of her estate, for the purpose of showing, I suppose, that the complainants were amply protected by that bond, in case there had been a recovery in their favor, and that the writ of *ne exeat* applied for and sued out in the cause was unnecessary. The Court excluded the evidence. The plaintiff having then closed the evidence, on motion of defendant's counsel, the Court awarded a non-suit. That is the case.

To sustain this action, the plaintiff must show affirmatively that the prosecution complained of was malicious and without probable cause, both concurring. This is the very groundwork, without which there is no cause of action. *Farmer vs. Darling,* 4 *Burr,* 1,975; *Graham vs. Bell,* 1 *Nott. & Md.,* 283; 2 *Gr. Ev.,* 449; It is not a sufficient proof of probable cause, that the plaintiff was acquitted of an indictment by reason of the non-appearance of the defendant, who was the prosecutor. *Purcell vs. Macnamard,* 9 *East.* 361; nor that the grand jury returned the bill not found. *Byrn vs Moore,* 4 *Taunt.,* 189. In that case Lord Mansfield said : " If this action could be maintained, every bill which the grand jury threw out would be the ground of an action." The fact that the goods were not stolen, but accidently mislaid, will not alone establish the want of probable cause. *Swain vs. Staf-*

*ford,* 4 *Iredell,* 362.   Probable cause does not depend on the actual state of the case, in point of fact, but on the honest and reasonable belief of the party prosecuting.   4 *Ire.,* 398 ; 2 *Gr. Ev.,* 455 ; *Johnstone vs. Sutton, T. R.* 510, is a leading case in actions of this kind.   Johnstone, who was commander of a squadron of ships and vessels of war, ordered Sutton, who was a post captain of one of the vessels forming the squadron, into custody for alleged disobedience of orders, and after detaining him in long confinement with attending circumstances of great cruelty, brought him to a court-martial, in which Sutton was honorably acquitted of the charge, in this wise :   " From the circumstances proved of the condition of the Isis, (whereof Sutton was commander,) was in, it appeared to the court-martial, that the plaintiff was justifiable," etc.   Upon action brought for the malicious prosecution and a recovery had, on motion to arrest judgment, the Exchequer Court held that the action was maintainable.   The cause being carried to the Exchequer Chamber, was heard before Lords Mansfield and Loughborough, who held, after much argument, that the judgment of the Exchequer Court should be reversed ; that the action was not maintainable, because it appeared on the face of the sentence, that there had been, in fact, a disobedience of orders, and although justifiable still, it afforded probable cause, and the decision was put on the authority of a case reported in 1 *Wils.,* 232, *Reynolds vs. Kennedy ;* that was an action for maliciously and without probable cause, prosecuting for condemnation, brandy seized as forfeited.   The brandy was condemned by the sub-commissioners, but the condemnation was most rightfully reversed, on appeal to the commissioners, and because of that condemnation by the sub-commissioners, the action would not lie for the reason as stated by Ch. J. Lee, that malice could not be inferred, but as was more correctly stated by Baron Eyre, that from the condemnation, probable cause would be inferred."

If the facts and circumstances show that in the prosecution the party was actuated by an honest and reasonable conviction of the justice of his suit, and not merely with a view to occasion expense to his adversary, the action will not lie. Now, upon the reason and principle of these authorities, this action cannot be maintained.   Who can doubt but that the defendant, in the prosecution of the suit for the recovery of

the property, was actuated by an honest conviction that he was entitled to the property? He was so advised by his counsel; it was so held by the presiding Judge of the Superior Court in which the case was tried. The whole record shows that there was probable cause. No writ or process was sued out in the cause but such as was advised by counsel and sanctioned by the Court, on a statement of facts that was not controverted. If we were to hold that this action would lie, it would be on the principle that every suitor who happens to be cast in his suit is liable to the action, for every process sued out by him during the progress of the suit for the protection of his interest, that is authorized by law, advised by counsel and sanctioned by the Court, no matter with what good faith and honest conviction the suit was prosecuted. Such ruling would be unsanctioned by and against all precedent and every principle of justice.

Judgment affirmed.