## SEAMANS v. HOGE.

In an action for malicious prosecution there can be no recovery where there was a probable cause for such prosecution, even though the defendant was actuated by improper motives.

Argued June 10, — Decided July 23, 1898.

Action for malicious prosecution. Before Judge Ross. City court of Macon. March term, 1897.

The plaintiff was prosecuted by the defendant for being a common cheat and swindler, and upon acquittal brought this suit for malicious prosecution. The defendant by his plea admitted that he instituted and carried on the prosecution, alleging that he had probable cause for so doing, and denying that he was actuated by any malice. The verdict was in his favor, and the plaintiff's motion for a new trial was overruled. The defendant kept a drug-store and soda-fountain where he dispensed carbonic-acid water, ice-creams, sherbets, etc. Plaintiff was a traveling salesman for Stokes & Turnbull, agents for the Fairbanks Company to sell gold-aluminum tableware. He called at the defendant's drug-store and offered to sell him spoons for use at the soda-fountain, exhibiting samples of the same and presenting a circular containing the following language: "Solid gold-aluminum spoons, forks, knives and tableware in general. These are made of extremely pure and perfectly solid metal called 'gold-aluminum.' They are free from any trace of the baser metals used in high-class plated ware; and having no plating, they will never wear nor lose their beautiful color. They are as durable as solid gold. They have the best of sanitary qualities, and are tough as steel, being practically unbreakable and everlasting. They are quickly cleaned by the ordinary means, and retain their polish with much less care than sterling silver. Putz's Pomade will make them bright new, which we furnish our patrons in limited quantities free of charge. [Signed] The Fairbanks Co." Defendant contends that plaintiff represented to him that the spoons were composed of gold and aluminum and that they would not tarnish. The plaintiff denied that he so represented, and testified that he told defend-

ant the metal was made by the Fairbanks Scale Company and was called gold-aluminum, but did not tell him there was any gold in it. He showed defendant how to clean the spoons with the application of Putz's Pomade. According to the testimony of defendant, the spoons would tarnish within an hour or less after being used at the soda-fountain, and would require almost continuous work in cleaning them to preserve their appearance. According to the testimony of a metallurgist employed at the foundry where the metal of which the spoons were composed was made, this metal was composed of five per cent. of pure aluminum and the rest of copper, and the name gold-aluminum was a "trade name used like many other such designations for some special metal so that it may have easy future recognition, and to add to the good-will value of the metal in the market," but such name was not used to deceive the public. Plaintiff paid defendant $11 for twelve spoons. After finding them unsuitable for use at the soda-fountain, defendant submitted one of them to a watchmaker who plunged it into nitric acid whereby it was thoroughly dissolved. He testified that he made this test for gold but could find no gold and did not think there was any aluminum either, because he did not think the acid would dissolve aluminum any quicker than it would gold, and that he told defendant this, and further told him he thought the spoon was copper or a composition of that kind. Defendant testified that the watchmaker told him there was not a particle of gold in the spoon and that it was nothing but brass. Defendant then dissolved one himself, and when he found ninety parts of copper, that was enough to satisfy him with regard to the use of the spoons at the fountain. He sent for plaintiff to come to the drug-store, but plaintiff failed to do so and left the city that afternoon. Defendant then stated his case to a justice of the peace, and subsequently swore out a warrant against the plaintiff charging that he " did commit the offense of cheating and swindling, selling to affiant one dozen spoons said to be gold-aluminum tableware, which proved to be brass, as a common cheat and swindler." There was evidence that brass is a compound of copper and zinc, and that the spoons in fact contained no brass. The justice who issued

the warrant testified, that about ten days or two weeks after defendant first consulted him about the transaction, he returned and said he had consulted Judge Freeman and had decided that he could not get the matter arranged, that he would not be imposed on, and would take out a warrant, that plaintiff had represented the spoons to be durable and of gold metal and all right, and they had turned out to be a fraud or imposition. Defendant seemed anxious to get the matter arranged, and when he first called upon the justice he told him that all he wanted was his money. Defendant testified that this was not true, that the justice received an incorrect impression from what he said, and that what he wanted was to get his money back and give back the goods, and in the event this was not done he was not satisfied. The justice told him that this was a matter the law permitted to be settled. The warrant was sworn out on the 30th of June. On the 5th of August the plaintiff was arrested thereunder, he being then engaged in other business, and was held two days in Atlanta, after which he was carried by an officer to Macon where the warrant was issued, and the justice who issued the warrant held him under $50 bail to appear before him on the 24th of August for a preliminary hearing. At the preliminary hearing he was bound over to the city court of Macon on the charge alleged, and his trial came on in the last-named court on the 21st of September. The solicitor-general testified that, about the time the commitment to the city court came to his office, defendant also came in and gave him the information on which he drew the accusation on which plaintiff was tried. This information was, in substance, that plaintiff had sold defendant the spoons upon representations that they were gold-aluminum, and defendant had had a test made and found that they were not as represented, but on the contrary were brass spoons or copper and aluminum spoons, and there was no gold in them at all; conveying the idea that he thought he was buying, from what plaintiff said, a composition of gold and aluminum, and that there was aluminum in the spoons but no gold and they were not gold-aluminum. Defendant in his testimony denied that he acted with any malice, and other witnesses testified that he did not seem to be so actuated.

The motion for a new trial alleges that the verdict is contrary to law and evidence, and that the court erred in refusing to charge: (*a*) "The criminal law was not designed to assist in the collection of a debt, and he who attempts it must expect to smart for it; and instituting a criminal prosecution with that motive is, in a legal sense, improper and malicious, although the defendant had reasonable grounds for belief of the plaintiff's guilt." (*b*) "While the malice necessary to the right of recovery may not be deduced as a necessary legal conclusion from a mere act, irrespective of the motive with which the act was done, yet any motive other than that of instituting the prosecution for the purpose of bringing the party to justice is a malicious motive on the part of the person who acts under the influence of it." And in charging: (*a*) " If there was probable cause to believe Mr. Seamans guilty of being a common cheat and swindler, and, notwithstanding such being the case, Mr. Hoge would not have prosecuted him if he had paid him back his money, and prosecuted him only because he did not pay him back his money, that would not entail liability." (*b*) " If there exists a probable cause, and the foundation of the prosecution is based upon a probable cause, then the existence of malice or the disregard of the rights and comforts of the one prosecuted would not entail any liability upon the prosecutor; because in order to be liable in damages the prosecutor must act without probable cause and with malice. Even if he should have legal malice by reason of the duty the law imposes upon him, or malice arising from hatred or personal spite, or a desire to be avenged, if there is probable cause to suspect the guilt of the one prosecuted, there can be no recovery for malicious prosecution, because the existence of probable cause authorizes a prosecution."

*Thomas R. R. Cobb,* for plaintiff.
*Dessau, Bartlett & Ellis,* for defendant.

SIMMONS, C. J. In order for a plaintiff to recover in an action for malicious prosecution, the burden is on him to show that the prosecution was instituted without probable cause. The want of probable cause is the gravamen of the action. Plaintiff may show express malice on the part of the prosecutor, and

still, if he fail to show that the prosecutor acted without proba-
ble cause, he can not recover. The prosecutor in a criminal
·case may have improper motives, may have hatred and malice
towards the accused, and yet, if he have probable cause for the
prosecution, damages can not be recovered against him. The
prosecutor need not be fully satisfied of the truth of the charge
when he institutes the prosecution; all that is necessary is that
he should have probable cause for its institution. If he have
probable cause, it is sufficient to relieve him of damages in an
.action against him for instituting the prosecution. *Rigden* v.
*Jordan & Stewart,* 81 *Ga.* 668; *Marable* v. *Mayer,* 78 *Ga.* 710;
·*Joiner* v. *Ocean Steamship Co.,* 86 *Ga.* 238.

> *Judgment affirmed. All the Justices concurring.*