## 11275.  JONES *v.* TEASLEY *et al.,* executors.

1. (*a*) " Where any suit is instituted . . by the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the . . . deceased person as to transactions or communications with such . . deceased person." Civil Code (1910), § 5858 (1).  The fact that evidence by a disinterested witness may have been adduced for the plaintiff in support of such a transaction would not operate to alter the rule.  *Dowdy* v. *Watson,* 115 *Ga.* 42 (7) (41 S. E. 266); *Jewell* v. *Walker,* 109 *Ga.* 241 (6) (34 S. E. 337); *Webb* v. *Simmons,* 3 *Ga. App.* 639 (1) (60 S. E. 334); *Chamblee* v. *Pirkle,* 101 *Ga.* 790, 792 (29 S. E. 20); *Cato* v. *Hunt,* 112 *Ga.* 139 (37 S. E. 183).

(*b*) " A ground of a motion for a new trial to the effect that the court erred in excluding the testimony specified as a whole is not a good ground, when a part of the testimony so specified is objectionable." *Ellis* v. *Riley,* 18 *Ga. App.* 778 (90 S. E. 724); *Desverges* v. *Marchant,* 18 *Ga. App.* 248 (2) (89 S. E. 221).

2. Any averment distinctly and plainly set forth in a petition shall be taken as prima facie true, unless it is denied by the defendant's answer, or the defendant shall state in his answer that he is unable either to admit or deny such affirmation, because of the want of sufficient information.  Civil Code (1910), § 5539; *Southern Bell Tel. Co.* v. *Shamos,* 12 *Ga. App.* 463 (77 S. E. 312).

3. The third ground of the amendment to the motion for a new trial furnishes no sufficient reason why the verdict should be set aside. The rejected testimony, even if relevant, could not of itself have authorized a verdict for the defendant.

DECIDED NOVEMBER 10, 1920.

Complaint; from Hart superior court — Judge Cobb presiding.  December 15, 1919.

The executors of T. W. Teasley, deceased, sued Thomas Jones and Judy Jones, as joint principals, on a promissory note signed by them as such and made payable to T. W. Teasley & Company. Paragraph 4 of the petition alleges, that T. W. Teasley was the sole member of the firm operating under the name of T. W. Teasley & Company, and that the note belonged to him at the date of his death.  Judy Jones filed an answer, denying liability and setting up the defense of non est factum, in that she had never signed the note sued on. Her answer states that she can neither admit nor deny the allegations contained in paragraph 4, but gives no reason for such failure.  The signatures of both Judy Jones and Thomas Jones, her husband, purport to have been executed by mark, and to have been witnessed by Charles J. Teasley.  On the

trial Charles J. Teasley testified that the note was freely and voluntarily signed by Judy Jones in his presence after it had been read over to her by T. W. Teasley. There was no attempt to impeach the credibility of this witness. The jury found a verdict for the plaintiff, and she made a motion for a new trial, which was overruled. The special grounds of the motion were in substance as follows: (1) The court erred in excluding the following testimony offered by the defendant in her own behalf: "No, sir, I did not sign it. In regard to making my mark, no, sir, I writes my name. I know nothing about the note at all. I never had any business dealings in the store of T. W. Teasley. Tom attended to all business. Tom was my husband." The sole ground of exception to the exclusion of this testimony is stated to be that it should have been admitted as in rebuttal of testimony already given by the witness for the plaintiff. (2) There was no proof that the note belonged to said T. W. Teasley at the date of his death. (3) J. R. Leard was not allowed to testify for the defendant as follows: "I have been knowing Judy Jones a long time, ten or twelve years and have had a great many business dealings with her. She always wrote her name."

*McCurry & Zellers,* for plaintiff in error.

*Skelton & Matheson,* contra.

JENKINS, P. J. (After stating the foregoing facts.) Under the rules of the common law a party or person interested in the litigation was incompetent to testify in his own interest. In removing this disqualification the law as now embodied in section 5858 of the Civil Code (1910) still retains by way of exceptions certain limited and specified portions of the former general inhibition, one of which, as abridged, is literally quoted in the first division of the syllabus. The Supreme Court has said that these remaining exceptions to the general rule, as provided for by this section, "are to be literally construed, and nothing will be added to or taken from them by judicial construction." *Hawes* v. *Glover,* 126 *Ga.* 305, 315 (55 S. E. 62); *Hendrick* v. *Daniel,* 119 *Ga.* 358, 360 (46 S. E. 438). The plaintiff in error does not dispute the proposition that her proffered and rejected testimony related to a transaction had with the deceased, but bases her contention as to its admissibility entirely upon the theory that, notwithstanding the prohibition of this code-section, it was nevertheless erroneous to

permit the testimony of the plaintiff's disinterested witness to stand without allowing her by her own evidence to rebut it. Under the well-established rule governing the construction of the code-section referred to, it would not be possible thus to add to or take from its plain and literal provisions. In the case of *Dowdy* v. *Watson*, 115 *Ga.* 42 (7) (41 S.E. 266), the Supreme Court held: "When in a suit on a promissory note instituted in the name of a partnership against the maker, to which the defendant inter-posed a plea of non est factum, it was admitted at the trial that one of the members of the partnership was dead, and the defend-ant offered as a witness in his own behalf to testify that he did not execute the note sued on, and it appeared from other testi-mony than that of the defendant himself that a transaction cul-minating in the execution of the note sued on was conducted by the defendant solely with the deceased partner, the defendant was not a competent witness to prove that he did not execute the note, or to contradict the testimony of the other witness that a transaction resulting in the execution of the note sued on was conducted with the deceased partner." Since a portion of the evi-dence specified as a whole by the first special ground of the motion for a new trial is thus clearly objectionable, the ground itself is defective, and the rejection of that portion of the proffered testi-mony therein set forth, relating to defendant's ability to sign her own name and her custom and habit in doing so, cannot, under this ground, be considered.

The third special ground undertakes, however, to present the same question as does the rejection of this portion of the evidence embraced in the first ground. The third ground complains that J. R. Leard was not allowed to testify as follows: " I have been knowing Judy Jones a long time, ten or twelve years, and have had a great many business dealings with her. She always wrote her name.". It is a general and well-recognized rule of law that proof of collateral facts not pertaining to the transaction in liti-gation, and which shed no light on the particular issue to be determined, is not permissible. The learned trial judge may have been correct in excluding the evidence as here offered, in accordance with the familiar rule or principle just stated, since it might reasonably be taken and construed as an effort on the part of the defendant to show her conduct in other independent

and particular transactions had with the witness, rather than a purpose to show her ability to sign her own name and a general custom or habit on her part of doing so. We are inclined to this view. Were we to consider it the other way, that is that the purpose and intent of this testimony was merely to show her capacity to sign her own name and her general habit and custom of doing so, then we would be constrained to hold that these circumstances were such as could ordinarily be considered by the jury in determining any issue made by the evidence as to whether the note was signed by a mark. "A habit of doing a thing is naturally of probative value as indicating that on a particular occasion the thing was done as usual, and, if clearly shown as a definite course of action, is constantly admitted in evidence." 1 Greenleaf on Evidence (16th ed.) 53 § 14 J; *Leonard* v. *Mixon,* 96 *Ga.* 239, 241 (23 S. E. 80, 51 Am. St. Rep. 134); *Burch* v. *American Grocery Co.* 125 *Ga.* 159 (53 S. E. 1008); *Western & Atlantic R. Co.* v. *Slate,* 23 *Ga. App.* 225, 226 (3) (97 S. E. 878). Thus, while it is true that if the evidence offered could be construed only as an effort on the part of the defendant to show her ability to sign her own name, and that it was her general custom and habit to do so, it would be admissible as a fact or circumstance which the jury would have the right to consider in determining where the *preponderance* of the evidence lay, we still do not think that such a circumstance taken by itself and alone would have justified a verdict for the defendant under the evidence in this case. In civil cases a preponderance of evidence is ordinarily considered sufficient to produce mental conviction. By a preponderance of evidence is meant the superior weight of evidence upon the issues involved. "In determining where the preponderance of evidence lies, the jury may consider all the facts and circumstances of the case, the witnesses' manner of testifying, their intelligence, their means and opportunity for knowing the facts to which they testified, and the probability or improbability of their testimony, their interest or want of interest, and also their personal credibility, so far as the same may legitimately appear from the trial. The jury may also consider the number of the witnesses, though the preponderance is not necessarily with the greater number." Civil Code (1910), § 5732.

It will be noted that in the statement of the elementary prin-

ciples just made, the rules mentioned relate to matters which may be considered in determining where the *preponderance of the evidence lies.* Where there is no evidence adduced on behalf of one of the litigants, a verdict is demanded against him; and in such a case, that is, where the proof is all one way, the opportunity does not and can not arise for the jury to apply these rules or any rules in determining on which side lies the *greater* weight of evidence. *Tompkins* v. *Corry,* 14 *Ga.* 118. Of course, if any of the proved facts and circumstances of the case are inconsistent with the sworn testimony, such testimony, even though not otherwise contradicted, may for that reason be rejected. *Detwiler* v. *Cox,* 120 *Ga.* 638 (48 S. E. 112). The same reasoning would apply where the proved circumstances are such as go far enough to render the sworn testimony incredible, impossible, or inherently improbable. *Patton* v. *State,* 117 *Ga.* 230 (5) (43 S. E. 533). "This court can not grant a new trial where the evidence is conflicting; it must do so where there is no evidence to support the verdict. Between conflicting evidence and a total want of evidence lies the debatable territory where this court must determine whether the evidence is of the character demanded by law, and sufficient to maintain the verdict in the particular case under consideration." *Patton* v. *State,* supra. In a case where the evidence made issues of fact, the rejected evidence might have furnished a circumstance which the jury could have properly considered in reaching a conclusion as to where the preponderance of the evidence lay. It might thus, as it were, furnish a collateral prop to the evidence which supports the verdict, but could not furnish the support itself upon which a verdict must stand. The mere fact that a person was sufficiently literate to be able to write out her own name, and was in the habit of doing so, is not only not inconsistent with the evidence of the unimpeached witness in the case, but such a circumstance does not render it inherently absurd or improbable that she together with her husband signed the instrument by mark, as shown by the undisputed evidence of an unimpeached witness. See *Georgia Railway & Electric Co.* v. *Harris,* 1 *Ga. App.* 714, 717 (57 S. E. 1076).

　　　*Judgment affirmed. Stephens and Smith, JJ., concur.*