24960.   SOUTH GEORGIA GROCERY COMPANY *v.* BANKS.

DECIDED OCTOBER 18, 1935.

*Harrell & Lilly, J. H. Tipton, Wilcox, Connell & Wilcox,* for plaintiff in error.

*P. B. Ford, Foy & Williamson,* contra.

GUERRY, J. This is a suit for damages for a malicious prosecution by the plaintiff in error (hereinafter referred to as the defendant) of the defendant in error (hereinafter referred to as the plaintiff). The alleged prosecution consisted of accusations charging the defendant with the offense of "selling whisky," and "having whisky." The jury returned a verdict for the plaintiff. The defendant's motion for new trial was overruled, and the exception is to that ruling. A consideration of the general grounds of the motion, that the verdict is contrary to the evidence and therefore contrary to law, will dispose of the writ of error.

The facts are substantially as follows: The plaintiff, J. T. Banks Jr., was employed by the defendant corporation as manager of one of its chain grocery stores in Sylvester, Georgia. S. J. Faircloth, vice-president and general manager of the defendant corporation, upon information that whisky was being handled at the store managed by the plaintiff, which information was furnished by a manager of another of the defendant's stores (who reported (and testified upon the trial) that two men, neither of whom he had seen before or since, and whose names he did not inquire, told him of whisky being sold at their store in Sylvester), assigned one Bridges to investigate the truth of the statements. Bridges testified that he went to Sylvester and heard rumors that Mr. Ballard, a farmer, had complained that his negroes had been obtaining whisky at the store, and that he and the plaintiff made a trip out to Ballard's farm that afternoon in order that he might investigate these statements, although the purpose of his mission was not known to the plaintiff. The fact of this trip was admitted by the plaintiff, and corroborated by Ballard. Upon arrival at the farm Ballard accompanied Bridges to talk to the negroes on the place, and at least one negro admitted that he had purchased liquor at the store from Purvis Daniels, the delivery boy. This was corroborated by the testimony of Ballard. On the return trip to town, Bridges inquired of the plaintiff if he knew where he could obtain whisky. The plaintiff replied that he did not know, that he did not fool with the stuff, but that he thought he might be able to obtain some for Bridges. Bridges testified that when they returned to the store the plaintiff called Daniels, the delivery boy; that Daniels disappeared for a few minutes, and then delivered him a pint of whisky, and he paid the plaintiff 50 cents for it. The plaintiff admitted

part of this transaction, but denied that he called Daniels, and said that Bridges called him; denied that the boy was gone only a few minutes, and said that he was gone some time, denied that Bridges paid him any money, and said that the money was given to Daniels. After this occurrence, and that night, Bridges returned to Quitman, the home office of the defendant, and related to Mr. Faircloth his version of his investigation. It seems that there existed, admittedly, a strong friendship of some years standing between Faircloth and the plaintiff's father, and on this account Faircloth requested Bridges to make further investigation before any action was taken in the matter. Bridges returned to Sylvester the next day, and, according to his testimony, made a similar request of the plaintiff for obtaining whisky, and the plaintiff again sent Daniels out, and this time he was gone only about one minute. He then returned with another pint of whisky and handed it to the plaintiff, who in turn handed it to Bridges. However, the circumstances of this transaction also were denied by the plaintiff, except that he admitted that Bridges did come in and get Daniels to go out for some more whisky. He further stated that he asked Bridges to leave the store and meet Daniels somewhere else, as he did not wish whisky to be delivered around the store; that Bridges declined to do so; and that he (plaintiff) did not handle the whisky or receive any of the money. Bridges returned to Quitman and reported the transaction to Faircloth, and was then requested by Faircloth to place the entire matter before Sheriff Sumner. About two weeks later, Bridges returned to Sylvester and related the two transactions to Sheriff Sumner. Sumner told Bridges (and this is corroborated by the testimony of Sumner), "at that time, and before the warrants were sworn out, . . about having information that whisky was being handled at that store. He said the chief of police had talked to him and told him it was bad there, and he knew that whisky was being sold around there." Sumner told Bridges, however, before the warrants were taken, that he himself did not have sufficient facts upon which to base a prosecution, and would have to rely solely on his evidence. Two warrants were then taken, upon affidavits of Bridges, one for the plaintiff and one for Purvis Daniels. Purvis Daniels was arrested first, and brought to the jail, and, upon being questioned by Bridges and Sumner, admitted to them the sales of liquor to Bridges, and further stated that he was handling

same for the plaintiff. In his statement, Daniels implicated another colored boy, Oscar Crapps, in the transaction, who, he stated was the supply house and kept it on his person, so that when any was wanted he could contact him. A warrant was then taken for Crapps, and he was brought to jail and questioned, and he corroborated the statement of Daniels. He further stated that the plaintiff and Mr. Black, the man who operated the meat market in the defendant's store, furnished him the whisky and he bottled it up and supplied it when needed. Later on the same day, and after all of the above facts had transpired and the above information had been communicated to Bridges and Sumner, the plaintiff was arrested and required to give bond. He was later tried and acquitted of the charges. Neither of these negroes testified in the trial of this case, nor does it appear that they testified against the plaintiff in the criminal prosecution. The plaintiff's evidence went mainly to a denial of any connection with whisky or the transactions testified about by Bridges; proof of certain claims of shortage against him by the defendant; testimony of statement of Bridges that if the shortages were straightened out, nothing would become of the liquor charges; and testimony of contradictory statements by Bridges.

"A criminal prosecution, maliciously carried on, and without any probable cause, whereby damage ensues to the person prosecuted, gives him a cause of action." Code of 1910, § 4439, Code of 1933, § 105-801. In such an action there can be no recovery without a concurrence of want of probable cause with malice. *Coleman* v. *Allen,* 79 *Ga.* 637 (5 S. E. 204, 11 Am. St. R. 449). "The mere fact that a person has been charged with a criminal offense, and has, upon trial therefor, been acquitted, does not give him a right of action against the prosecutor. He must go further and prove that the prosecution was instituted with malice and without probable cause." *Stuckey* v. *Savannah, Florida and Western Ry. Co.,* 102 *Ga.* 782 (29 S. E. 920). As was said in *Coleman* v. *Allen,* supra: "The general principle, that in an action for malicious prosecution there can be no recovery without a concurrence of the want of probable cause with malice, is fully recognized. If probable cause and malice are both present, there can be no recovery; if they are both absent there can be none. In this class of actions, it is only where malice is present and probable cause is absent that

there can be a recovery." See further, in this connection, *Hearn* v. *Batchelor*, 47 *Ga. App.* 213 (170 S. E. 203), and cit. The reason for the requirement that want of probable cause should concur with malice, to sustain the action, was well stated in *Porter* v. *Johnson*, 96 *Ga.* 145 (23 S. E. 123), as follows: "So far as I know, no respectable court in this country has ever held that an action will lie against a person for having brought an action against another, unless he did so with malice and without probable cause. If the law were otherwise, the ending of an action would be merely the beginning of litigation. The defendant, immediately upon the failure of the action, would begin one against the plaintiff; and if the latter action should fail, the defendant therein would in turn bring another action, and so on ad infinitum." While malice is essentially a part of the action, want of probable cause is the foundation; for malice may be inferred from a lack of probable cause (*Hearn* v. *Batchelor*, supra) simply because one who carries on a criminal prosecution against another without probable cause can not be said to have done so from just motives. However, want of probable cause can never be inferred from malice. As to what is probable cause, our Code declares: "Want of probable cause . . shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused." Code of 1910, § 4440; Code of 1933, § 105-802. This section has been held not to be exhaustive of all cases where a lack of probable cause shall exist. *Coleman* v. *Allen*, supra.

Probable cause has been defined to be "the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." *Wheeler* v. *Nesbit*, 24 How. (U. S.) 44 (16 L. ed. 765). This rule is accepted by the general weight of authority, and by the courts of this State. In *Hartshorn* v. *Smith*, 104 *Ga.* 235 (30 S. E. 666), it was said: "In actions for malicious prosecution, the question is, not whether the plaintiff was guilty, but whether the defendant had reasonable cause to so believe—whether the circumstances were such as to create in the mind of the defendant a reasonable belief that there was probable cause for the prosecution. Probable cause is defined to be the existence of such facts and cir-

cumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." See further, in this connection, *Seamans* v. *Hoge,* 105 *Ga.* 159 (31 S. E. 156); *Darnell* v. *Shirley,* 31 *Ga. App.* 764 (122 S. E. 252). All that is really required is an honest belief, or strong ground of suspicion, of the plaintiff's guilt, and a reasonable ground for the belief or suspicion, and that may be upon information from others as well as from personal knowledge. Harpham *v.* Whitney, 77 Ill. 32; Murray *v.* Long, 1 Wend. 140; Bacon *v.* Towne, 4 Cush. (Mass.) 217; *Stuckey* v. *Savannah, Fla. &c. Ry. Co.,* supra; *Joiner* v. *Ocean·Steamship Co.,* 86 *Ga.* 238 (12 S. E. 361). "Probable cause does not depend on the actual state of the case, in point of fact, but on the honest and reasonable belief of the party prosecuting." *Cook* v. *Walker,* 30 *Ga.* 519. It is essential, in this connection, that lack of probable cause and malice be shown in "carrying on," the criminal proceeding. Malicious prosecution actions do not lie except where the criminal proceeding has been "carried on." There must be a prosecution. It is not sufficient to show merely that a warrant was sworn out and then dismissed or settled; it must be averred and proved that the prosecution put into motion by the warrant was carried on. "An inquiry before a committing court, or justice of the peace, amounts to a prosecution." Code of 1910, § 4445; Code of 1933, § 105-805. Thus, where the proceeding was not carried to this extent, no action for malicious prosecution will lie. Holding that "Simply making an affidavit before a justice of the peace, charging one with an offense against the criminal laws of this State, when not followed up by an arrest, does not render the prosecution, even if malicious and without probable cause, actionable." *Swift* v. *Witchard,* 103 *Ga.* 193 (29 S. E. 762).

As a general rule, the burden of proving lack of probable cause and malice rests on the plaintiff. However, in the case at bar, the defendant filed a plea of justification, admitting "the act to be done," under the Code of 1910, § 4488; Code of 1933, § 105-1801; and assumed the burden of proving the existence of probable cause. See *Rigden* v. *Jordan,* 81 *Ga.* 668; *Horton* v. *Pintchunck,* 110 *Ga.* 355 (35 S. E. 663). The gist of the plaintiff's contention before this court is that whether or not there existed probable cause and malice was purely a question for the jury, and that they have re-

solved this question in his favor. However, it has been generally recognized that in this type of action the functions of the court and jury are clear and distinct. What facts and circumstances amount to probable cause is a pure question of law. Whether they exist or not in any particular case is a pure question of fact. *Hearn* v. *Batchelor,* supra, and cit. See also Turner *v.* O'Brien, 5 Neb. 547. It therefore remains to be considered: Do the facts, as found by the jury to exist, support their finding that the prosecution of plaintiff was without probable cause and with malice, under the principles laid down above? We recognize fully that one could not justify himself for the prosecution of another, upon vague rumors and conjecture, upon outwardly suspicious circumstances when he well knew their innocent character, upon information or evidence of others plainly unworthy of belief. Yet the facts in this case, which are admitted by plaintiff, the facts which are uncontradicted and which are not incredible, impossible, or inherently improbable (*Jones* v. *Teasley,* 25 *Ga. App.* 784, 105 S. E. 46), show that there existed probable cause for the prosecution. We are not to try the guilt of the accused; the jury by its verdict has declared his innocence. But the facts that existed at the time of the prosecution and which were before the prosecutor were sufficient to create in the mind of a reasonable man a belief that the accused was guilty of the charge. Rumors were current that whisky was being sold in and around the store of which the accused plaintiff was manager. Ballard had complained that his negroes after getting to the store would soon become "liquored up;" at least one negro admitted the purchase of liquor from the delivery boy. Bridges, the prosecutor, according to his evidence and that of the plaintiff purchased liquor from the delivery boy. The plaintiff was manager of the store, had full control of the employees; and a reasonable man might well have concluded from the facts that the plaintiff knew of the activities of the delivery boy, Daniels, and aided and abetted him in the matter. His protestations that he did not fool with the stuff and did not want it around the store might well have been taken by Bridges, as a reasonable man, in view of the rumors and facts which had already transpired, as merely a cloak or added precaution of the plaintiff to cover his connection therewith. But beyond this, before the plaintiff was subjected to prosecution as that term is legally defined, two full and complete confessions were had from

Daniels and Crapps of their participation in the selling of whisky at the store, and in which they directly accused the plaintiff of being the boss of the criminal enterprise. The accusations were not unreasonable or improbable or incredible; no evidence appears as to why they were not worthy of belief; nor is it shown that the prosecutor had any reason to believe that their statements were untrue, or that he conspired with them falsely against the plaintiff or paid them to swear falsely. Much stronger circumstances of the guilt of one of crime could hardly be asked.

In *Stuckey* v. *S. F. & W. Ry. Co.*, supra, it was said: "If a prosecutor is informed by credible witnesses of the commission of an offense against the laws of the State, and institutes a prosecution on the faith of this information, he can not be mulcted in damages because of the acquittal of the accused in the criminal case." See also in this connection, *Joiner* v. *Ocean Steamship Co.*, supra. Whether or not the investigation made against plaintiff was begun in malice, as that term is defined in law, or whether or not the prosecution was with malice on the part of the prosecutor, becomes immaterial under the view we have taken of the case. See *Seamans* v. *Hoge*, supra. The ruling we have made under the facts presented seems to be entirely in accord with all authorities cited to us, and those that have been read from our own research. Our criminal law is not self-operative. It must be administered by human agencies. An action of this character is strictly guarded, and the terms under which it will lie are strictly stated. The action is not favored by the law, and especially is this true where the suit is based upon a criminal proceeding against the plaintiff; for public policy favors the exposure of crime, which a recovery against a prosecutor obviously tends to discourage. See *Ventress* v. *Rosser,* 73 *Ga.* 534; *Joiner* v. *Ocean Steamship Co.*, supra; *Henderson* v. *Francis,* 75 *Ga.* 178. It is therefore the decision of this court that the verdict is contrary to the evidence, and therefore contrary to law; and the judgment overruling the motion for new trial should be and is *Reversed. Broyles, C. J., and MacIntyre, J., concur.*