## 76978. K MART CORPORATION v. GRIFFIN.
(375 SE2d 257)

BEASLEY, Judge.

Dixie Griffin sued K Mart for malicious prosecution (OCGA § 51-7-40), false arrest (OCGA § 51-7-1), and false imprisonment (OCGA § 51-7-20), but the case was tried only on the first count. K Mart ap-

peals from the judgment for Ms. Griffin.

The first five enumerations of error attack the sufficiency of the evidence. Thus, as presented by the parties, and given the law on malicious prosecution and the merchant's statutory defense (OCGA § 51-7-60), the question boils down to whether there is any evidence of probable cause and malice. According to the code, both must be established by the plaintiff in order to carry her burden of proof. *Turner v. Bogle*, 115 Ga. App. 710 (155 SE2d 667) (1967). *West v. Baumgartner*, 228 Ga. 671, 676 (187 SE2d 665) (1972); *Seamans v. Hoge*, 105 Ga. 159 (31 SE 156) (1898); *Nunnally v. Revco*, 170 Ga. App. 320 (316 SE2d 608) (1984).

Malice may be inferred from a *total* lack of probable cause, OCGA § 51-7-44, so the focus need be only on whether there was any evidence that K Mart lacked probable cause to instigate and carry on a criminal prosecution against Ms. Griffin for shoplifting. That "is the gravamen of this tort." *Day Realty Assoc. v. McMillan*, 247 Ga. 561, 562 (277 SE2d 663) (1981). She had been acquitted by a jury of the crime, but of course that is not proof of a lack of probable cause. *Fisher v. Ky. Fried Chicken*, 175 Ga. App. 542, 545 (333 SE2d 877) (1985); *Darnell v. Shirley*, 31 Ga. App. 764, 765 (122 SE 252) (1924).

Plaintiff has a particularly heavy burden in malicious prosecution cases because of the countervailing public interest in encouraging the citizen to discharge his duty to society to vindicate violations of law. " 'The courts have always distrusted malicious prosecution actions, and have retained a strong hand over them. For this reason the existence of probable cause, which involves only the conduct of a reasonable man under the circumstances, and does not differ essentially from the determination of negligence, usually is taken out of the hands of the jury, and held to be a matter for decision by the court.' [Cit.]." *Day Realty Assoc.*, supra.

Plaintiff's climb up the hill is met with another obstacle. Not only have the courts traditionally disfavored such suits, but in 1958 the legislature encoded that view with specific protection to the merchant, which is now found in OCGA § 51-7-60. It outlines what actions of a merchant will, by law, take his actions outside the scope of consideration of whether he lacked probable cause. That is, if the merchant's actions conform to the description in the statute, then as a matter of law he did *not* lack probable cause and a jury could not find otherwise. The purpose of the statute is to remove such cases from jury consideration and, hopefully, from filing in the first place.

"What facts and circumstances *amount to* probable cause is a pure question of law." *South Ga. Grocery Co. v. Banks*, 52 Ga. App. 1, 7 (182 SE 61) (1935); *Hearn v. Batchelor*, 47 Ga. App. 213, 214 (170 SE 203) (1933). (Emphasis supplied.) Thus, although "[l]ack of probable cause shall be a question for the jury, under the direction of the

court," OCGA § 51-7-43, this is not without qualification. For if the material facts are essentially undisputed, whether or not probable cause existed is for determination by the court. *Melton v. La-Calamito*, 158 Ga. App. 820, 823 (282 SE2d 393)(1981); *Arnold v. Eckerd Drugs*, 183 Ga. App. 211, 212 (358 SE2d 632) (1987); *Fisher*, supra at 545.

We turn, then, to examine the facts that are undisputed, recognizing that the disputed facts are to be viewed in favor of the verdict for plaintiff. All-important is what appeared to K Mart's loss-prevention manager to be going on in this incident, for it is he who apprehended Ms. Griffin and pursued the prosecution. He had been employed in this security capacity for over two years at the time of the incident and had been trained in loss prevention and security.

The store had a service desk at the front, which patrons had to pass upon entering and where they were supposed to check in and have tagged any items being brought into the store. He observed Ms. Griffin, a middle-aged woman whom he did not know, in the center aisle with a pair of purple stretch pants held in her hand. The pants were not on a hanger, which is how they are normally displayed and normally carried by a customer who wishes to purchase them. She was not in the clothing section. She was also carrying a wig in a plastic box. When she was in the toy department, he saw her put the pants in her purse.

She then went to the rest room at the far opposite end of the store, appeared to read the sign saying no merchandise was to be taken in, laid the wig on a counter, and went in. When she exited, she went straight to the check-out and paid for the wig with a check. The loss-prevention manager approached her, identified himself, told her he saw her place an article of clothing in her purse in the toy department, and wanted to know what it was. He saw the pants in the side of the purse and asked her to accompany him to the security office, which she did.

In the purse were the stretch pants and a scarf, both brand-new and with labels showing they were merchandise manufactured for K Mart. Neither had a price tag, and Ms. Griffin said she bought the pants earlier at either another K Mart or a Wal-Mart but, when asked, said she did not have and could not produce a sales receipt, only a check stub. She knew the price, as differentiated from a higher priced style, and the apparel manager verified the garment as K Mart merchandise.

The manager called the police, and an officer came and took custody. A receipt was never produced, and the case was tried, with the manager and the female employee who witnessed the security office events serving as witnesses for the state.

These undisputed facts "established by competent evidence . . .

[t]hat the plaintiff had so conducted [her]self or behaved in such manner as to cause a man of reasonable prudence to believe that [she], at or immediately prior to the time of the detention or arrest, was committing the offense of shoplifting, as defined by Code Section 16-8-14; . . . ." OCGA § 51-7-60. Thus, as a matter of law, plaintiff is precluded from recovery, and defendant was entitled to a directed verdict at the close of all the evidence. OCGA § 9-11-50 (a); *Pendley v. Pendley*, 251 Ga. 30 (1) (302 SE2d 554) (1983); *United Fed. Savings &c. Assn. v. Connell*, 166 Ga. App. 329 (1) (304 SE2d 131) (1983). The judgment must be reversed and entered instead by the trial court for defendant. OCGA § 9-11-50 (e).

This being the case, the remaining enumerations are rendered moot.

*Judgment reversed and case remanded with direction. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED OCTOBER 27, 1988 —
REHEARING DENIED NOVEMBER 10, 1988 — ■

*Smith, Shaw, Maddox, Davidson & Graham, James D. Maddox,* for appellant.

*Patton, Price & Murphy, C. Ronald Patton,* for appellee.