A90A1243. BARBER v. H & H MULLER ENTERPRISES, INC.
(397 SE2d 563)

BIRDSONG, Judge.

Appellant/plaintiff, Donald R. Barber, appeals the order of the superior court granting summary judgment to appellee/defendant, H & H Muller Enterprises, Inc. (Muller), in this suit for malicious arrest and prosecution.

On November 24, 1987, a local McDonald's, owned by Muller, was robbed when the assistant or opening manager, Ms. Spurling, and lobby hostess, Ms. Adkins, attempted to open the business. The robber, although apparently wearing sunglasses and a hat, was clearly visible to the two ladies and at times stood about one foot away from

Spurling. The women each gave the police a statement that same day in which they individually identified the robber. Their descriptions were substantially consistent, and included inter alia the fact that the perpetrator was a black male, five feet nine inches tall, weighing about 180 to 190 pounds, muscular build, with a three-day growth of beard, in his late twenties or early thirties, medium-brown complexion, full lips, and carrying a small, silver, automatic pistol. They also gave substantially similar descriptions of the clothing the perpetrator was wearing. On November 24, 1987, appellant was 25 years of age, wore a beard, weighed between 205 and 215 pounds and was five feet and eleven inches in height.

Regarding the weapon, the ladies initially informed the police they were not certain whether it was a revolver or an automatic, but later stated they thought it was possibly an automatic. Ms. Spurling also stated that the perpetrator "has been a regular customer over the past few months."

On May 2, 1988, Ms. Spurling saw a man, later identified as appellant, in McDonald's whom she then believed to be the robber. Spurling apparently asked Ms. Adkins if she could identify the perpetrator, and Adkins independently identified the same man, appellant Barber. Ms. Spurling's manager was notified and the police were called. Appellant was taken to the police station where once again both Spurling and Adkins made positive identifications of appellant as the perpetrator. At some point Ms. Spurling indicated that she desired appellant to be prosecuted, and was apparently thereafter asked to swear out an arrest warrant for appellant, which she did. Ms. Spurling's main motivation for going to the police station to identify the perpetrator was "[t]o punish whoever it was that jeopardized [her] life," and she "wasn't trying to hurt anybody, or anything." She "didn't want to convict the wrong person." Ms. Spurling believed she was doing her "civic duty" to sign the warrant. Spurling was taken before the magistrate who held a hearing to determine whether probable cause existed for appellant's arrest. In addition to the testimony of Spurling, the magistrate also had in his possession "the information from the November 24, 1987 robbery available to him," including the "description of the robber" given to the police. The magistrate issued the criminal warrant after finding the existence of "probable cause for arrest of the accused." The police continued their investigation, and appellant made a statement wherein, although denying any complicity in the robbery, he admitted that he has been to McDonald's five or ten times, he had a beard around last Thanksgiving (November 1987) but has since shaved it off, and that he owned a silver .32 caliber revolver, but it was stolen around November or December of 1987. It was subsequently determined that appellant had reported to the police that his silver revolver was stolen December 15, 1987.

During his interview, appellant could not provide police with an alibi for the day of the robbery, due to the length of time that had elapsed. Appellant consented to a search of his domicile, which produced negative results.

On May 6, 1988, a preliminary hearing was held; however, Spurling and Adkins arrived late, and consequently, the arrest warrant against appellant was dismissed. After Spurling and Adkins arrived, Detective Burrows elected to explain the next procedure would be that "a package would be sent to the district attorney's office for review, and that the case is not necessarily ended at this point because of the dismissal, and that the district attorney would be getting in touch with her for presentment to the grand jury." Appellant's attorney, Mr. Talansky, was present and asked the ladies how positive they were in their identifications and gave them reasons why he did not believe appellant was a robber. Appellant asserts uncontrovertedly that Adkins became upset and unsure whether appellant was the man who committed the robbery. Spurling, in response to a question from appellant's counsel regarding how certain she was about her identification, remained adamant as to the accuracy of her identification of appellant and expressed her desire to the counsel that prosecution continue. Spurling apparently was upset at this meeting because the warrant was dismissed, as she had been lost in traffic. Spurling and Adkins said "nothing" to Detective Burrows during their conversations with appellant's counsel and Detective Burrows asked them no questions. Although the women did not ask, Burrows informed them of the procedures which "would be transpiring" in the case. Neither Spurling nor Adkins had any further involvement concerning appellant's arrest or prosecution after the May 6 hearing.
*Held*:

1. Appellant asserts that the trial court erred in granting appellee/defendant's motion to strike certain evidence.

Appellant argues that the trial court "without explanation struck Det. Burrows' testimony at [a]ppellant's preliminary hearing of May 6, 1988. (R. 422)." Examination of page 422 of the record reflects that Burrows was not placed under oath, but was allowed to make a statement for the purpose of explaining why the State was not ready to proceed. The record does not reveal any express striking of only Burrows' explanation.

However, the trial court granted defendant's motion to strike the entire transcript of the DeKalb County Magistrate Court, dated May 6, 1988, together with striking selected paragraphs of the affidavit of Mr. Talansky. The order also reflects on its face that, in addition to considering the motion, the trial court "considered" the oral arguments presented by both parties on January 2, 1990. The record does not contain a transcript of this argument. Rather, appellant amended

his notice of appeal to provide that no transcript will be filed. Without the benefit of the transcript of the hearing on the motion to suppress, we are unable to determine accurately the basis for the trial court's rulings, the legal positions actually advanced by the parties, and whether appellant subsequently acquiesced to any ruling of the trial court as to these issues. "Where [appellant chooses] to omit the transcript, and it is necessary for a review of the claimed error, [he] has failed to meet [his] burden of showing error. In such case, this court will assume the evidence is sufficient [to support the trial court's ruling] and affirm." *Hunnicutt v. Hunnicutt*, 182 Ga. App. 578, 579 (356 SE2d 679); see *Vaughan v. Buice*, 253 Ga. 540 (322 SE2d 282). " 'Clearly it is not the function of the appellate court to prosecute an appeal on appellant's behalf.' " *Acker v. Jenkins*, 178 Ga. App. 393, 394 (1) (343 SE2d 160).

2. Appellant asserts that the trial court erred in granting appellee's motion for summary judgment.

(a) The standards for review of motion for summary judgment where the movant is the defendant (*Moore v. Goldome &c. Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843)) and has, as here, pierced the opposing party plaintiff's pleadings (*Balke v. Red Roof &c. Co.*, 190 Ga. App. 779, 781 (380 SE2d 61); *Southern Trust Ins. Co. v. Braner*, 169 Ga. App. 567, 569 (1) (314 SE2d 241)) is well established and will be applied.

(b) A criminal prosecution carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action. OCGA § 51-7-40. The difference between malicious prosecution and malicious arrest is that the former contains the additional element of showing that a prosecution, whatever its extent, was carried on and terminated in favor of the plaintiff. *Bennett v. Fine Jewelers &c.*, 194 Ga. App. 377, 378 (390 SE2d 625).

Pretermitting the question of whether appellee is liable for the acts of Spurling and Adkins is the issue of whether a genuine issue of material fact exists as to the elements of either the torts of malicious prosecution or malicious arrest.

The trial court concluded that "the facts presented demonstrate circumstances which amount to probable cause." Generally, lack of probable cause shall be a question for the jury, under the direction of the court. OCGA § 51-7-43. But, " '[w]hat facts and circumstances *amount to* probable cause is a pure question of law.' " *K Mart Corp. v. Griffin*, 189 Ga. App. 225, 226 (375 SE2d 257); compare *Abiodun v. C & S Nat. Bank*, 192 Ga. App. 159 (384 SE2d 248) and *Abernathy v. Dover*, 139 Ga. App. 323 (228 SE2d 359). Yet, "[e]ven assuming . . . a jury question was presented on the issue of probable cause . . . plaintiff was also required to present evidence of malice" (*Brown v. Scott*,

151 Ga. App. 366, 368 (3) (259 SE2d 642)). Although not expressly provided by statute, the malice " ' "contemplated by law in an action for malicious prosecution is the *same* as in an action for malicious arrest." ' " (Emphasis supplied.) *Worn v. Warren*, 191 Ga. App. 448, 449 (1) (382 SE2d 112); accord *Melton v. LaCalamito*, 158 Ga. App. 820, 824 (2) (c) (282 SE2d 393), citing *Darnell v. Shirley*, 31 Ga. App. 764 (2) (122 SE 252). Malice in an action for malicious prosecution or malicious arrest consists "in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured." OCGA § 51-7-2; *Worn v. Warren*, supra at 449 (1). The trial court held that no such malice existed on the part of appellant's employees. In the case sub judice, there is no direct evidence whatever of any type of fraudulent conduct or improper motive on the part of appellee or its employees, Spurling and Adkins. However, at least as to a malicious prosecution claim, "[a] total lack of probable cause is a circumstance from which malice may be inferred" (OCGA § 51-7-44; see also OCGA § 51-7-43), and we will assume but not decide that this general legal principle should also be applied to the "same" malice element found in malicious arrest. Compare *American Plan Corp. v. Beckham*, 125 Ga. App. 416 (4) (188 SE2d 151) (applying the codal principles now found in OCGA §§ 51-7-43 and 51-7-44 in determining the existence of malice in an action for malicious use of civil process). Nevertheless, while *total* want of probable cause is sometimes a circumstance from which malice may be inferred, " 'where there is no evidence of malice other than such inference as may be drawn from proof of the want of probable cause, and that proof shows some circumstances pointing to the guilt of the accused, although insufficient to exclude every other reasonable hypothesis, the essential ingredient of malice is not so established as to entitle the plaintiff in an action for malicious prosecution [or malicious arrest] to recover.' " *Brown*, supra at 368-369. We are satisfied the trial court was correct. "Summary judgment law does not require the movant to show that no issue of fact remains but only that no genuine issue of material fact remains; and while there may be some shadowy semblance of an issue, the case may nevertheless be decided as a matter of law where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion." (Citations and punctuation omitted.) *Peterson v. Liberty Mut. Ins. Co.*, 188 Ga. App. 420, 424 (373 SE2d 515). We are satisfied appellee has met the requisite tests required for the issuance of summary judgment to a movant defendant.

*Judgment affirmed. Banke, P. J., and Cooper, J., concur.*

ON MOTION FOR REHEARING.

We have considered the record in its entirety, including those facts asserted by appellant in his motion for rehearing, and adhere to our judgment affirming the trial court's grant of summary judgment to appellee/defendant.

*Motion for rehearing is denied.*

DECIDED SEPTEMBER 7, 1990 —
REHEARING DENIED OCTOBER 2, 1990.

*King, Morriss, Talansky & Witcher, Joseph H. King, Jr., Gerald L. Talansky,* for appellant.

*Smith, Gambrell & Russell, David A. Handley, John D. Hipes,* for appellee.