## 61405. MELTON et al. v. LaCALAMITO.

Pope, Judge.

Appellee filed this action against appellants Melton and U-Haul Co. of Western Georgia, Inc. (U-Haul) seeking damages for malicious prosecution and false imprisonment. A jury returned a verdict in favor of appellee in the amount of $10,000 actual damages and $5,000 punitive damages. Appellants enumerate as error the trial court's denial of their several motions for directed verdict. Appellants also enumerate several instructional deficiencies and contend that the evidence was insufficient to support the verdict.

On May 29, 1976 appellee rented a trailer and hitch from a U-Haul station in New Jersey in order to facilitate his move to Atlanta. On May 30 appellee, together with his parents and younger brother, arrived in Atlanta by car with the trailer and hitch attached thereto. After the trailer had been unloaded, appellee drove the rental equipment to a "U-Haul Moving Center" on Ponce de Leon Avenue in Atlanta where he turned the equipment over to Melton. When the trunk of the car was opened so that the hitch could be detached, Melton saw two U-Haul furniture pads (or blankets) "kind of on the spare tire and tucked in behind it." Appellee refused to surrender the pads to Melton, explaining that his father had been a U-Haul dealer in New Jersey and that the pads had been in his family's possession for more than 10 years. He further explained that after his father had decided to discontinue his relationship with U-Haul, the company removed its equipment but left the two furniture pads, which had since that time been carried in the trunk of the car. Although the rental agreement disclosed that no furniture pads had been rented by appellee, Melton insisted that the pads be surrendered to him before he would return appellee's deposit. Appellee refused and Melton called the police.

The police officer who responded to Melton's call testified as follows: "A. When I arrived at the scene, Mr. Melton, who was the manager or the owner of the place, advised me that he had a car that had several of the company's blankets and that they did not sell blankets, that he had tried to get the blankets back from the guy that was driving the car and the person would not give the blankets back, and he advised me at that point it was company policy to call the police . . . Q. Now, when you talked with [appellee], what did you say and what did he say? A. I asked him about what the complainant had advised me of, that the blankets were company property, and he stated to me that they were his property or his family's property. The owner or the manager of the U-Haul rental outlet advised me that they did not sell blankets, that the only reason a person should be in

possession of said blankets [was] if they rented them. The subject [appellee] advised me that he did not have a rental agreement. Again, he advised me that they were property of the family, at which point Mr. Melton, the manager of the U-Haul rental outlet, advised me again that it was company policy they did not sell . . . anything. The only way a person should have the blankets or could come by the blankets [was] with a rental agreement. I advised the subject . . . that all we wanted to do was give the company their blankets back. Mr. Melton stated that he didn't want to go to court or he didn't want to see the guy locked up or anything. He just wanted his company's blankets back. . . . Q. Now, when you said all you wanted was to get U-Haul's property back, what did he say? A. He advised me he wasn't going to return the property. Again, he said it was property of his family. . . . Since we weren't able to get Mr. LaCalamito to return the blankets to the company, to U-Haul, we had no choice but to make an arrest."

Appellee's mother, a New Jersey law enforcement officer, arrived at the scene shortly after the police and supported appellee's assertion as to the ownership of the pads by also explaining to both Melton and the police how the pads came to be in her family's possession. Nevertheless, appellee was arrested and charged with possession of stolen goods; he spent the next several hours in jail. Following a municipal court hearing on the following day, the charge against appellee was dismissed.

1. Appellants first enumerate as error the trial court's denial of their motion for directed verdict on the ground that there was no agency relationship shown between Melton and U-Haul. The evidence showed that Melton was "the owner/operator" of the U-Haul Moving Center under contract with appellant U-Haul. Although he was self-employed under the terms of the contract, Melton testified that he had standing instructions from U-Haul to take back in a peaceful manner such things as he might perceive to be U-Haul property. Pursuant to these instructions, Melton called the police when appellee refused to surrender the furniture pads.

"The . . . question presented is whether [U-Haul] is liable in view of Code § 4-312, which provides 'The principal shall not be liable for the wilful trespass of his agent, unless done by his command or assented to by him.' The Supreme Court has held that Code § 4-312 must be construed in pari materia with Code § 105-108 and, so construed, means that the principal 'may be liable if the trespass was committed by his *implied* command or *implied* assent; and if committed within the scope of the agency, the implication will arise as a matter of law.' *Planters Cotton-Oil Co. v. Baker,* 181 Ga. 161, 163 (181 SE 671) [(1936)]." *Ford Motor Co. v. Williams,* 108 Ga. App. 21,

24 (132 SE2d 206) (1963), revd. on other grounds, 219 Ga. 505 (134 SE2d 32) (1963). Notwithstanding Melton's status as an independent contractor, the evidence is undisputed that his actions in attempting to recover the furniture pads were directed by U-Haul. Compare *Brown v. Triton, Inc.,* 115 Ga. App. 785 (156 SE2d 200) (1967), wherein the individual defendant did not have authority from the corporation to swear out a warrant charging a person with a crime. Therefore, appellants' first enumeration is without merit. Code Ann. § 81A-150 (a); see *Colonial Stores, Inc. v. Holt,* 118 Ga. App. 826 (166 SE2d 30) (1968); *Central of Ga. R. Co. v. Dabney,* 44 Ga. App. 143 (3) (160 SE 818) (1931).

2. Appellants also cite as error the trial court's denial of their motions for directed verdict challenging the sufficiency of the evidence. Code Ann. § 105-801 defines malicious prosecution as "A criminal prosecution, maliciously carried on, and without any probable cause, whereby damage ensues to the person prosecuted. . . ."

(a) Appellants contend that Melton's action in calling the police was insufficient to support a finding of malicious prosecution since he did not direct that appellee be arrested. "The law draws a fine line of demarcation between cases where a party directly or indirectly urges a law enforcement official to begin criminal proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prosecute. In the former case there is potential liability for false imprisonment or malicious prosecution *(Duchess Chenilles, Inc. v. Masters,* 84 Ga. App. 822, 827 (67 SE2d 600) (1951)); in the latter case there is not. *Hammond v. D. C. Black Inc.,* 53 Ga. App. 609 (186 SE 775) (1936). It is clear, though, that the initiation of the criminal action need not be expressly directed by the party to be held liable. *Webb v. Prince,* 62 Ga. App. 749, 752 (9 SE2d 675) (1940)." *Ginn v. C. & S. Nat. Bank,* 145 Ga. App. 175, 178 (243 SE2d 528) (1978).

The rule applicable in a situation such as that presented in this case is stated in Prosser, Law of Torts § 119 at 837 (4th Ed. 1971): "If the defendant [here Melton] merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instigated the proceeding; but if it is found that his persuasion was the determining factor in inducing the officer's decision, or that he gave information which he knew to be false and so unduly influenced the authorities, he may be held liable."

The testimony shows that Melton indicated to the police that he did not want to go to court or to see appellee jailed. Nevertheless,

during a period of discussion lasting 30 to 40 minutes, Melton continued to insist on the surrender of the furniture pads as property belonging to U-Haul. Since appellee refused to surrender the pads, the police "had no choice but to make an arrest." Under these circumstances, the jury was authorized to conclude that Melton's insistance that the pads were U-Haul property was the determining factor leading to appellee's arrest and prosecution. See *Conley v. Troncalli Motor Co.,* 150 Ga. App. 723 (1) (258 SE2d 533) (1979); *Ginn v. C. & S. Nat. Bank,* supra.

(b) Appellants also contend that there was probable cause to believe appellee did not acquire the furniture pads in a lawful manner. In malicious prosecution actions "[w]ant of probable cause is a question for the jury, under the direction of the court. The question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show probable cause existed is a matter of fact, to be determined by the jury, but whether they amount to probable cause is a question of law for the court." *Hearn v. Batchelor,* 47 Ga. App. 213, 214 (170 SE 203) (1933); see *Day Realty Associates v. McMillan,* 247 Ga. 561 (277 SE2d 663) (1981). The material facts in this case were essentially undisputed. Therefore, whether or not probable cause existed was for determination by the court. *Ayala v. Sherrer,* 135 Ga. App. 431, 434 (218 SE2d 84) (1975).

The evidence showed that the furniture pads were both marked with the U-Haul name; U-Haul did not sell furniture pads; the pads were neither hidden nor concealed in the trunk and were described as "rags" worth between $2.50 and $4.00 each; the rental contract did not show that appellee had rented any pads; there was no evidence that the furniture pads were rented from a dealer other than the one who rented appellee the trailer and hitch or pursuant to a separate contract; Melton called the police with the expectation that appellee would be intimidated by their presence into surrendering the pads; prior to appellee's arrest and incarceration, both appellee and his mother related to Melton how the pads came to be in their possession; even after appellee's mother had agreed to surrender the pads, Melton did nothing to keep appellee from being arrested; and the charge against appellee was dismissed following a hearing before a magistrate.

" 'In actions for malicious prosecution, the question is, not whether the plaintiff [appellee] was guilty, but whether the defendant [Melton] had *reasonable cause to so believe* — whether the circumstances were such as to create in the mind of the defendant a *reasonable belief* that there was probable cause for the prosecution. [Cit.] Probable cause is defined to be the existence of such facts and

circumstances as would excite the *belief* in a reasonable mind, that the person charged was guilty of the crime for which he was prosecuted.' " *Tanner-Brice Co. v. Barrs,* 55 Ga. App. 453 (2) (190 SE 676) (1937). "While [probable cause] need not approach absolute certainty as to the facts, and it is not inconsistent with a considerable element of doubt, it must be more than mere conjecture or unfounded suspicion. Beyond this, the belief must be supported by appearances known to the defendant at the time, and a prosecution instituted without probable cause cannot be justified by anything, short of guilt in fact, which comes to the knowledge of the defendant later. . . . The appearances must be such as to lead a reasonable man to set the criminal proceeding in motion. The defendant is not necessarily required to verify his information, where it appears to be reliable; but where a reasonable man would investigate further before beginning the prosecution, he may be liable for failure to do so. All such factors as the reliability of the source, the availability of further information and the difficulty of obtaining it, the reputation of the accused, and his opportunity to offer an explanation, and the apparent necessity of prompt action, are to be considered in determining whether it was reasonable to act without verification." Prosser, supra at 842.

Applying the foregoing analysis to the facts of this case, we believe that the trial court properly concluded that the evidence did not demand a determination that probable cause existed for appellee's arrest. We find particularly persuasive the fact that the criminal charge against appellee was dismissed following a preliminary hearing at which essentially the same facts as were known to Melton when appellee was arrested were presented to a magistrate. While not conclusive, the dismissal of the charge is evidence that probable cause was lacking. Prosser, supra at 845. The evidence that Melton was given an explanation by appellee, attested to by his mother, to the effect that appellee was in lawful possession of the furniture pads "raised a jury question as to whether a reasonably prudent person would have made further inquiry before prosecuting. *Sanfrantello v. Sears, Roebuck & Co.,* 118 Ga. App. 205 (163 SE2d 256) [(1968)]." *Bi-Lo, Inc. v. Stanciel,* 148 Ga. App. 614, 615 (251 SE2d 834) (1979).

(c) Appellants further contend that the evidence was devoid of any showing of malice on their part. "The 'malice' contemplated by law in an action for malicious prosecution is the same as in an action for malicious arrest, and 'may consist in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual.' " *Darnell v. Shirley,* 31 Ga. App. 764 (2) (122 SE 252) (1924). From the circumstances present in this case, the jury could infer malice. See, e. g., *Wilborn v. Elliott,* 149 Ga. App. 541 (5)

(254 SE2d 755) (1979); *Orr v. Floyd,* 95 Ga. App. 401 (3) (97 SE2d 920) (1957); *Auld v. Colonial Stores Inc.,* 76 Ga. App. 329 (3) (45 SE2d 827) (1947).

(d) Finally, appellants contend that there were no aggravating circumstances to authorize the jury to award punitive damages under Code Ann. § 105-2002. "In an action for malicious prosecution the plaintiff is not restricted to actual damages but may recover such damages as are authorized under all the circumstances in the case." *Progressive Life Ins. Co. v. Doster,* 98 Ga. App. 641, 642 (106 SE2d 307) (1958). "A jury may award additional damages in a tort action where there are 'aggravating circumstances, either in the act or the intention.' Code Ann. § 105-2002. [Cit.] '(T)o authorize the imposition of exemplary damages, or punitive damages as they are commonly called, under Code Ann. § 105-2002 there must be evidence of wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences.' [Cit.] There is sufficient evidence of record that a jury could [in addition to an inference of malice] find a 'conscious indifference to consequences' as to the actions of the defendant. . . ." *Felton v. Mercer,* 149 Ga. App. 358, 361 (254 SE2d 398) (1979); see *Gaddy v. Gilbert,* 140 Ga. App. 508 (3) (231 SE2d 403) (1976).

There being evidence supportive of appellee's contentions, the evidence did not demand a verdict in favor of appellants as to any of their motions for directed verdict and the trial court did not err in denying same. Code Ann. § 81A-150 (a). Accordingly, appellants' second and fifth enumerations of error are not meritorious.

3. (a) The trial court did not err in failing to give appellant's request to charge No. 5 since this was not an action for malicious use of civil process.

(b) Nor did the trial court err in refusing to give appellants' request to charge No. 7 "since the last-minute request was not submitted in accordance with Code Ann. § 70-207(b)." *Whiteway Laundry &c. v. Childs,* 126 Ga. App. 617, 619 (191 SE2d 454) (1972).

4. (a) This was an action for malicious prosecution, not malicious arrest. See generally *Waters v. Winn,* 142 Ga. 138 (1) (82 SE 537) (1914). Since malice must be shown in order to recover damages in an action for malicious prosecution (Code Ann. § 105-801), the trial court did not err in charging the jury as to malice in the language of *Darnell v. Shirley,* supra, cited in Division 2(c) of this opinion. Nor was it error to charge as to the measure of damages set forth in Code Ann. § 105-808. *Baldwin v. Davis,* 188 Ga. 587 (7) (4 SE2d 458) (1939).

(b) Appellants contend that since Melton personally did not arrest or restrain appellee, the trial court erred in charging on false

imprisonment. Code Ann. § 105-901. However, "a private person who causes or directs the arrest of another by an officer without a warrant may be held liable for false imprisonment, in the absence of justification. Therefore one who actively instigates or procures an arrest, without lawful process, is generally regarded as the principal for whom the officer acts, and he may be liable to respond in damages. . . . While it was held in *Hammond v. D. C. Black Inc.,* [supra], that the 'person calling the officers is not guilty of an illegal arrest where he does not direct or request the making of the arrest,' it was not held that the direction had to be made in express terms. It is sufficient that the person alleged to have caused the plaintiff's arrest should by his conduct and acts have procured and directed the arrest." *Webb v. Prince,* supra at 752. Accordingly, this contention has no merit.

(c) In light of our holding in Division 2(d) of this opinion, the trial court did not err in charging as to punitive damages in the language of Code Ann. § 105-2002.

*Judgment affirmed. Quillian, C. J., and McMurray, P. J., concur.*

DECIDED JUNE 17, 1981.

*George H. Connell, Jr.,* for appellants.
*Gregg Loomis,* for appellee.