## 64880. WILSON v. BONNER et al.

CARLEY, Judge.

In a multi-count complaint, plaintiff-appellant brought suit against the following defendant-appellees: Bonner, the Sheriff of DeKalb County; S. S. Kresge Company, d/b/a K-Mart (K-Mart); and Lionel Leisure, Inc., d/b/a Lionel Leisure City (Lionel). Appellant's complaint purported to set forth the following claims for relief: Malicious prosecution; false arrest; false imprisonment; assault; trespass; kidnapping; invasion of the right of privacy; and violation of the Georgia and Federal Constitutions.

The case proceeded to trial before a jury and, at the close of all the evidence, the trial court directed a verdict in favor of appellees as to all of appellant's claims except those for false imprisonment and invasion of privacy. The jury returned a verdict for all three appellees as to those two remaining claims. Appellant appeals.

1. Appellant asserts error in the direction of a verdict in favor of appellees K-Mart and Lionel on the malicious prosecution claim. The essential elements of a claim for malicious prosecution are "(1) prosecution for a criminal offense; (2) under a valid warrant, accusation or summons; (3) that the prosecution terminated in favor of the plaintiff; (4) that it was instituted maliciously; (5) that it was

instituted without probable cause; and (6) that it damaged the plaintiff. [Cits.]" *Ellis v. Knowles,* 90 Ga. App. 40, 42 (1) (81 SE2d 884) (1954).

The relevant facts are as follows: In payment of merchandise, both appellee-K-Mart and appellee-Lionel accepted a check written on the account of and signed by an individual bearing the name Joyce Wilson. The checks were not honored by the bank because no such account existed at the time they were presented for payment. Appellees then obtained warrants for the arrest of Joyce Wilson on a charge of passing bad checks. The warrants which issued for the arrest of Joyce Wilson listed as her residence the address which appeared on the face of the dishonored checks. Appellee-Bonner, acting on the warrants, effectuated the arrest of appellant on July 29, 1975. At that time, appellant was not a resident of nor was she arrested at the address listed on the warrants. Appellant was released from jail on July 31, 1975. Thereafter, appellees K-Mart and Lionel received certain information which, for the first time as to them, raised the question of whether appellant was in fact *the* Joyce Wilson who had passed the bad checks. However, notwithstanding this information supplied to appellees which indicated that appellant was not the correct Joyce Wilson they wished to prosecute, the solicitor's office prepared — during the second week of August, 1975 — accusations which clearly charged appellant, Joyce *Ann* Wilson, with passing bad checks to appellees. The accusations against appellant were subsequently nol prosed in September of 1975 on the basis of appellant's mistaken identification as the Joyce Wilson who had passed the bad checks to appellees.

On this evidence, it is clear that the original warrants obtained by appellee-K-Mart and appellee-Lionel for the arrest of Joyce Wilson cannot serve as the basis for appellant's malicious prosecution action. "This is an action for malicious prosecution. It involves mistaken identity. The evidence is uncontradicted that there never was a warrant issued for the arrest of the plaintiff in this case. The fact that the defendants, with probable cause, obtained a warrant meant for another person having the identical name of plaintiff cannot be expanded to infer that the defendant[s] intended maliciously for just *any* person of that name *or this plaintiff* to be prosecuted for the offense." *Massey Stores v. Reeves,* 111 Ga. App. 227, 228 (141 SE2d 227) (1965). "Since the uncontradicted evidence shows that there never was a warrant sworn out charging this [appellant], the plaintiff in this case, with [passing bad checks], it follows that as to [her] there was *no* warrant. 'Where the warrant is void, malicious prosecution will not lie.' [Cit.] A fortiori, a suit for malicious prosecution will not lie against a prosecutor where there

was in fact no warrant at all issued on the prosecutor's accusation for the arrest of the person of the plaintiff bringing the action." *Massey Stores v. Reeves,* supra at 230. "An arrest based upon a warrant which is void furnishes no basis for action for malicious prosecution. [Cits.]" *J. C. Penney Co. v. Green,* 108 Ga. App. 155, 157 (132 SE2d 83) (1963). Compare *Auld v. Colonial Stores,* 76 Ga. App. 329 (45 SE2d 827) (1947); *Bi-Lo, Inc. v. Stanciel,* 148 Ga. App. 614 (251 SE2d 834) (1979). "If the plaintiff was arrested and prosecuted under a valid warrant, the action is malicious prosecution; *if wrongfully under a void warrant . . . the action is false imprisonment."* (Emphasis supplied.) *Smith v. Embry,* 103 Ga. App. 375, 377 (119 SE2d 45) (1961).

However, under the circumstances of the instant case, that the original arrest warrants were void as to appellant would not be dispositive of the malicious prosecution claim. It is clear that the prosecution of Joyce Wilson initially instituted by the warrants proceeded to a subsequent prosecution of appellant, Joyce Ann Wilson, under *valid* accusations. "A malicious prosecution may be as extensive, in the beginning, as in the rise of the initial facts and circumstances giving birth to the malicious spirit or motive to prosecute, and in the conclusion, as in the last efforts to convict under the final process under which the defendant is then being tried, and may include all mesne or intermediate acts or things or processes which may support or evidence such motive. Within the rule may be warrants, accusations, or indictments, or reissues of either where dismissed or nolprossed." *Price v. Cobb,* 63 Ga. App. 694, 700-701 (11 SE2d 822) (1940). Accordingly, appellant argues that her malicious prosecution claim is not controlled by the legal principles relating to prosecutions under void warrants but, rather, comes within the following rule: "[E]ven if on instigating the prosecution the prosecutor had probable cause at the commencement, if he afterwards acquired knowledge, or the reasonable means of knowledge, that the charge was not well founded, his continuation of the prosecution is evidence of the want of probable cause, requiring that the question be submitted to the jury." *Auld v. Colonial Stores,* supra, at 330 (2e). In this connection, appellant relies upon the evidence which shows that after her arrest on the void warrants, appellees received information that she was probably not *the* Joyce Wilson who had passed the bad checks but that, even with this information, appellees did not drop the charges. Appellant contends that this failure or refusal on the part of appellees to drop the charges immediately or at least within a reasonable time resulted in the solicitor's office eventually drawing up against her in her own full name, Joyce Ann Wilson, the accusations which were only

subsequently nol prosed based upon mistaken identity. Appellant contends that this evidence shows that appellees allowed the original prosecution initiated by the void arrest warrants to be "continued" against her under valid accusations and that this prosecution under the accusations was "instituted" by appellees without probable cause because at the time they were drawn, appellees had acquired knowledge that appellant was not the Joyce Wilson sought.

Our review of the evidence shows that it would authorize a finding that, after the arrest, appellees did in fact receive information, in the form of oral communications and photographic comparisons, that appellant was most probably not the Joyce Wilson who had passed the bad checks. While there is some evidence that, after this became known to appellees, they acquiesced in the solicitor's office handling the issue of whether to prosecute appellant or drop the charges because of mistaken identification (see *Spratlin v. Manufacturers Acceptance Corp.,* 105 Ga. App. 463 (125 SE2d 110) (1962)), there is also evidence that appellees were, during this period, more interested in ending the prosecution by having appellant pay the checks, despite the information clearly indicating that she was probably not the drawer thereof, than in prosecuting the correct Joyce Wilson. See *Auld v. Colonial Stores,* supra, at 330. " 'While a prosecutor need not be fully satisfied of the truth of the charge that he makes in his affidavit, and is not required to have a sufficient statement of fact to guarantee a conviction, nevertheless, where slight diligence would have brought to his attention facts which would have shown conclusively that there could be no conviction, whether or not he is guilty of malicious prosecution is a question of fact to be determined by the jury.' [Cit.]" *Voliton v. Piggly Wiggly,* 161 Ga. App. 813 (288 SE2d 924) (1982). " 'While (probable cause) need not approach absolute certainty as to the facts, and it is not inconsistent with a considerable element of doubt, it must be more than mere conjecture or unfounded suspicion. Beyond this, the belief must be supported by appearances known to the defendant at the time, and a prosecution instituted without probable cause cannot be justified by anything, short of guilt in fact, which comes to the knowledge of the defendant later ... The appearances must be such as to lead a reasonable man to set the criminal proceeding in motion. The defendant is not necessarily required to verify his information, where it appears to be reliable; but where a reasonable man would investigate further before beginning the prosecution, he may be liable for failure to do so. All such factors as the reliability of the source, the availability of further information and the difficulty of obtaining it, the reputation of the accused, and his opportunity to offer an explanation, and the apparent necessity of prompt action, are to be

considered in determining whether it was reasonable to act without verification.' [Cit.]" *Melton v. LaCalamito,* 158 Ga. App. 820, 824 (282 SE2d 393) (1981).

Where, as here, there is evidence authorizing a finding that, after being made aware of the question of possible mistaken identity and of the probability that appellant was not the person sought for prosecution, appellees "acquiesced" in the solicitor office's handling of the issue while apparently using that acquiescence as a means to secure payment of the debt from appellant, we cannot say that there was no evidence of appellees' lack of good faith in the securing of the subsequent accusations. See *Auld v. Colonial Stores,* supra, at 330 (2 e,f). "The evidence that defendant was placed on notice that plaintiff may not have written the check prior to the [preferment of the accusations] raised a jury question as to whether a reasonably prudent person would have made further inquiry before prosecuting. [Cit.]" *Bi-Lo v. Stanciel,* supra, at 615. "Furthermore, issues of fact remain as to whether the defendant[s] acted maliciously in failing to request that the prosecution be terminated after learning what had actually happened." *Voliton v. Piggly Wiggly,* supra, at 815. Compare *Barber v. Addis,* 113 Ga. App. 806 (149 SE2d 833) (1966).

The trial court erred in directing a verdict for appellees K-Mart and Lionel as to appellant's malicious prosecution claim.

2. Appellant enumerates as error the direction of a verdict for appellees on her trespass, assault and kidnapping claims. The evidence which appellant cites as authorizing the submission of these claims to the jury is, essentially, exactly the same evidence which was in fact submitted to the jury in connection with her false imprisonment claim. According to appellant, the evidence regarding her trespass, assault and kidnapping claims is that, through appellees' joint action, she was illegally arrested (trespass), detained (assault) and deprived of her personal liberty for a period of time (kidnapped). See generally *Duchess Chenilles v. Masters,* 84 Ga. App. 822, 826 (2) (67 SE2d 600) (1951).

Under these circumstances it was not error to grant appellees a directed verdict as to appellant's trespass, assault and kidnapping "claims." " 'Facts, alone or in conjunction with purely substantive law, do not give a right of action, but are alleged in order to show a wrong which has called into operation the remedial law which gives the right of action. The facts are merely the means, and not the end. They do not constitute the cause of action, but they show its existence by making the wrong appear. "The *thing,* therefore, which in contemplation of law as its *cause,* becomes a ground for action, is *not* the group of *facts* alleged in a declaration, bill, or indictment, *but the result of these in a legal wrong, the existence of which, if true, they*

*conclusively evince.*" [Cit.] Different facts may be alleged, separately or cumulatively, to show the same wrong, and the number and variety of the facts alleged will not make more than one cause of action, so long as but one wrong is shown. *A single wrong will not be made plural by alleging that it is made up of a number of constituent parts.'* [Cit.]" (Emphasis supplied.) *New York Life Ins. Co. v. Bradford,* 55 Ga. App. 248, 256 (189 SE 914) (1937). "For every right there shall be a remedy, and every court having jurisdiction of the one may, if necessary, frame the other." OCGA § 9-2-3 (Code Ann. § 3-105). Where, as here, appellant was arrested and detained under a void warrant, the remedy is an action for false imprisonment. See *Courtenay v. Randolph,* 125 Ga. App. 581 (1) (188 SE2d 396) (1972). The "single wrong" of false imprisonment is not made plural by alleging that it was made up of constituent parts: Trespass; assault; and, kidnapping. Appellant's false imprisonment claim was submitted to the jury. It was not error to direct a verdict for appellees as to the constituent parts of that claim.

3. Appellant enumerates as error the failure of the trial court to give the following request to charge: "[I]n making or procuring the arrest of another person, both officers and private persons act at their peril in the matter of identity. If the wrong person is arrested, they are liable for false imprisonment, and *good faith is no defense.*" (Emphasis supplied.) Our review of the transcript demonstrates, and appellant apparently concedes, that the charge as actually given by the trial court sufficiently covered the principles contained in her refused request with the exception of the emphasized portion negating good faith as a viable defense. It is the absence of this principle in the charge as given that appellant contends renders the failure to give her request erroneous.

Contrary to appellant's assertions, good faith would be a viable defense under the circumstances of the instant case. The facts clearly show that appellant bore the same name as that specified in the warrants but was not the individual by that name who had passed the bad checks and for whose arrest the warrants were otherwise valid. "If the person is described [in the warrant] by name only, [the officer] must . . . exercise due diligence in determining whether the person arrested bears the name specified in the warrant, and the arrest will be justified if the person bears the name; although a detention might be illegal when information comes to the officer that the person so arrested is not the person against whom the warrant was issued. If there are two or more persons, within the bailiwick of the officer in whose hands the warrant is placed, bearing the same name, the officer is charged with the duty of ascertaining, before making an arrest, which of such persons the warrant was intended for. If he decides this

question in good faith, he is not a trespasser in making the arrest, although he may make a mistake and arrest the wrong person. If an officer arrest a person bearing a name stated in the warrant, and such person is described as being in his bailiwick, and there be only one person bearing such name therein, the officer is protected in making the arrest, although the person may be innocent, and there may have been a mistake made as to the name stated in the warrant. If there be two or more persons of the same name within the bailiwick, the officer must make diligent inquiry as to the identity of the person named in the warrant; and if he make such inquiry and arrest a person of that name in good faith, believing he is the person named in the warrant, the officer is also protected. If there has been a mistake made as to the name in the warrant, and the prosecutor is responsible for such mistake, the prosecutor might be liable, but the officer would be blameless. We are aware of the importance of the question involved as to the responsibility of an officer executing a warrant where there are two or more persons bearing the name stated in the warrant . . . We are aware that the rule that the officer in such cases acts at his peril has been laid down by courts of respectable standing; but we think that the rule of good faith is more consonant with our system as indicated by the provisions of the code . . ." *Blocker v. Clark,* 126 Ga. 484, 488-489 (54 SE 1022) (1906). See also *Stewart v. Williams,* 243 Ga. 580 (255 SE2d 699) (1979); *Massey Stores v. Reeves,* supra.

The cases relied upon for the proposition that the arresting officer acts at his peril and that good faith is not a defense in a false imprisonment case are distinguishable factually. See e.g., *Johnston v. Riley,* 13 Ga. 97, 137 (1853) (warrant issued for Robert J. Williams but Spencer Riley arrested) (discussed and distinguished in *Blocker v. Clark,* supra, at 487); *Vlass v. McCrary,* 60 Ga. App. 744 (5 SE2d 63) (1939) (illegal arrest without a warrant). Accordingly, the trial court did not err in failing to give the charge requested by appellant.

With regard to appellant's further contention that another of her requested charges relating to her false imprisonment claim was erroneously refused, our review demonstrates that the principles contained in the request were sufficiently covered in the charge as given and, furthermore, that appellant's requested instruction was correctly refused as being argumentative. See generally *Ga. Sou. & Fla. R. Co. v. Odom,* 152 Ga. App. 664, 667 (6, 7) (263 SE2d 469) (1979).

4. In several enumerations, appellant asserts that the trial court erred in refusing to give numerous requested instructions. We have carefully and thoroughly reviewed the entire charge given by the trial court. That review demonstrates that the jury was given instructions which were full, fair, complete and adjusted to the evidence and law

applicable to appellant's false imprisonment claim. See generally *Blocker v. Clark,* supra; *Stone v. Nat. Surety Corp.,* 57 Ga. App. 427 (195 SE 905) (1938); *J. C. Penney v. Green,* supra; *Ginn v. C. & S. Nat. Bank,* 145 Ga. App. 175 (243 SE2d 528) (1978). When appellant's requested instructions are considered against the charge as given, no error is found in the refusal to give any of them. Such legal principles contained in appellant's refused instructions as were applicable and adjusted to the facts were otherwise sufficiently covered in the trial court's charge. Accordingly, appellant's enumerations of error premised upon the refusal to give her requested instructions are meritless.

5. At trial, appellees offered for admission into evidence the deposition of a psychiatrist who had treated appellant prior to the time of her arrest on the warrants. According to appellees, appellant's preexisting mental and emotional condition was a relevant issue in the case because of the damages appellant was seeking to recover. The trial court ruled the deposition admissible over several blanket objections raised by appellant to its general overall admissibility, including the violation of the patient-psychiatrist privilege, hearsay and the deponent's inability to testify from his own recollection. While the entire deposition was not excluded over appellant's stated objections, the trial court did consider and, in some instances, sustain numerous objections to specific portions of the deposition. On appeal, appellant apparently asserts error only in the trial court's initial evidentiary ruling that, as against the stated objections to its general overall admissibility, the deposition as a whole was not excludable from evidence.

At least one, if not all, of appellant's objections to the general admissibility of the deposition was meritorious. Under OCGA § 24-9-21 (5) (Code Ann. § 38-418) communications between a psychiatrist and patient are privileged and "excluded from consideration." In *Kimble v. Kimble,* 240 Ga. 100 (239 SE2d 676) (1977), the Supreme Court, in affirming the trial court's denial of *any* opportunity whatsoever to depose the opposing party's psychiatrist, held: "In the present case the appellee went to the psychiatrist on her own volition for the purpose of gaining professional psychiatric assistance, thus creating the requisite confidential relationship of psychiatrist and patient. Under these circumstances the appellee could claim the privilege of [OCGA § 24-9-21 (5)] . . ." *Kimble v. Kimble,* supra, at 101. Thus, under this interpretation of OCGA § 24-9-21 (5) (Code Ann. § 38-418), and assuming there to be no waiver of the statutory privilege, the existence of a "voluntary" psychiatrist-patient relationship renders any testimony whatsoever by the psychiatrist excludable from evidence at the election of the

patient. This "voluntary" relationship exists in the instant case and the fact that appellant was seeking to recover damages for injuries of a mental and emotional nature would not constitute a waiver of the privilege under OCGA § 24-9-40 (Code Ann. § 38-418). Compare *Orr v. Sievert,* 162 Ga. App. 677 (292 SE2d 548) (1982). Accordingly, the deposition was erroneously admitted into evidence.

However, the error in admitting the deposition testimony in the instant case was harmless. Insofar as the psychiatrist's deposition was admitted, it appears that essentially the same facts concerning appellant's mental and emotional state before the arrest, including her hospitalization and diagnosis, were already before the jury in the form of appellant's own testimony and the testimony of her own witnesses, including her mother, her aunt and the psychiatrist who had treated her after the arrest. "Where evidence of the same nature as that objected to is admitted, without objection, the admission of the evidence objected to, if error, is harmless. [Cit.]" *Saint v. Ryan,* 114 Ga. App. 489 (1) (151 SE2d 826) (1966). "[T]he testimony merely corroborated other uncontroverted evidence before the jury and could not have affected the verdict. [Cit.]" *Bransome v. Barton,* 154 Ga. App. 799, 800-801 (270 SE2d 55) (1980).

6. For the reasons discussed in Division 1, the trial court erred in directing a verdict for appellees K-Mart and Lionel on appellant's malicious prosecution claim. No other reversible error appears as to appellant's other claims or as to appellee Bonner. Accordingly, the judgment is reversed as to appellees K-Mart and Lionel and affirmed as to appellee Bonner.

*Judgment affirmed in part and reversed in part. Shulman, C. J., and Quillian, P. J., concur.*

DECIDED MARCH 9, 1983 —
REHEARINGS DENIED MARCH 18 and MARCH 25, 1983 —

*Richard C. Freeman III, Gary G. Agnew,* for appellant.
*Samuel P. Pierce, Jr., Christopher D. Olmstead, A. Ed Lane,* for appellees.