68998. MUNFORD, INC. v. ANGLIN.
(329 SE2d 526)

CARLEY, Judge.

Appellee filed a complaint against appellant, purporting to set forth claims of malicious prosecution and gross negligence. The case proceeded to trial, and the jury returned a verdict for appellee. Appellant appeals.

1. Appellant enumerates as error the denial of its motion for a directed verdict as to appellee's claim of malicious prosecution. The relevant facts are as follows: The manager of a Majik Market store that was owned and operated by appellant, witnessed an individual pump ten dollars' worth of gasoline into an automobile from one of the store's gasoline pumps and then drive away without paying. The store manager believed that the individual was appellee, who was a regular customer of the store. The following morning, the store manager notified the police that appellee had stolen gasoline. Appellee was later questioned by a police officer, at which time he denied taking the gasoline. There is evidence that, at this time, appellee also informed the police officer of his whereabouts during the evening in question and of the identities of several alibi witnesses. There is further evidence that appellee produced receipts for gasoline purchased elsewhere on the evening in question. Appellee was questioned again by the police several days later, at which time he gave them the same information. Subsequently, appellant caused a warrant to be issued for appellee, and he was arrested. A committal hearing was held, which resulted in a finding that probable cause was lacking. Accordingly, the charge against appellee was dismissed.

"The essential elements of a claim for malicious prosecution are

'(1) prosecution for a criminal offense; (2) under a valid warrant, accusation or summons; (3) that the prosecution terminated in favor of the plaintiff; (4) that it was instituted maliciously; (5) that it was instituted without probable cause; and (6) that it damaged the plaintiff. [Cits.]' [Cit.]" *Wilson v. Bonner*, 166 Ga. App. 9 (303 SE2d 134) (1983). Appellant first asserts that the evidence demanded a finding that probable cause existed for appellee's arrest.

" 'In determining whether or not there was a total want of probable cause for a criminal prosecution alleged to have been maliciously carried on, the question is not whether the accused was actually guilty of the offense with which he was so charged, but the real question is whether the prosecutor had reasonable cause so to believe, — that is, whether the circumstances at the time of the prosecution were such as to create in the mind of the prosecutor a reasonable belief that there was probable cause for the prosecution.' [Cit.]" *Jones v. Walker*, 167 Ga. App. 286, 287 (306 SE2d 315) (1983).

In the instant case, even if, based upon the initial, albeit mistaken, eyewitness identification of appellee as the perpetrator, appellant had probable cause to commence the prosecution of appellee, a directed verdict for appellant would not necessarily be authorized. A claim for malicious prosecution may also be based upon a want of probable cause in the *continuation* of a prosecution. " '[E]ven if on instigating the prosecution the prosecutor had probable cause at the commencement, if he *afterwards* acquired knowledge, or the reasonable means of knowledge, *that the charge was not well founded,* his *continuation* of the prosecution is evidence of the *want* of probable cause, requiring that the question be submitted to the jury.' [Cit.]" (Emphasis supplied.) *Wilson v. Bonner*, supra at 11. " 'While a prosecutor need not be fully satisfied of the truth of the charge that he makes in his affidavit, and is not required to have a sufficient statement of fact to guarantee a conviction, nevertheless, where slight diligence would have brought to his attention facts which would have shown conclusively that there could be no conviction, whether or not he is guilty of malicious prosecution is a question of fact to be determined by the jury.' [Cit.]" *Voliton v. Piggly Wiggly*, 161 Ga. App. 813-814 (288 SE2d 924) (1982). See also *Melton v. LaCalamito*, 158 Ga. App. 820, 823 (2) (b) (282 SE2d 393) (1981).

Based upon the foregoing, we find that there was some evidence that, in the exercise of slight diligence, appellant would have had facts brought to its attention which showed that the charge against appellee was not well founded. It is undisputed that, at all times, appellee had available alibi witnesses and receipts for gasoline purchased elsewhere that evening. There was also evidence that the police had been apprised of this information prior to appellant's causing a warrant to be issued for appellee's arrest. Moreover, at no time did

appellant contact appellee concerning the charges brought against him. Therefore, the existence of probable cause was a question for the jury. See generally *Melton v. LaCalamito*, supra at 824; *Wilson v. Bonner*, supra at 13; *Auld v. Colonial Stores*, 76 Ga. App. 329, 330 (2) (E) (45 SE2d 827) (1947).

Appellant also contends that a directed verdict on appellee's malicious prosecution claim was demanded because there was no evidence of its malice. " 'The "malice" contemplated by law in an action for malicious prosecution . . . "may consist in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual." ' [Cit.] From the circumstances present in this case, the jury could infer malice. [Cits.]" *Melton v. La-Calamito*, supra at 824-825. "Malice can be inferred from a total lack of probable cause and this also is a jury question. [Cit.]" *Jones v. Walker*, supra at 287.

There being evidence supportive of appellee's claim for malicious prosecution, the trial court did not err in denying appellant's motion for directed verdict.

2. Following the close of appellee's evidence, appellant also made a motion for directed verdict on appellee's claim for "gross negligence." Appellant enumerates the trial court's denial of this motion as error.

The specific facts ostensibly supporting appellee's gross negligence claim are as follows: At the Majik Market store involved in this case, a certain gasoline pumping system was utilized whereby a customer could first pump gasoline, and afterwards pay for the amount of gasoline pumped. Following payment by the customer, that pump was cleared for immediate use by the next customer. Appellee asserts that this type of system encourages individuals to drive off without paying and, consequently, results in the possible misidentification of individuals who allegedly have driven off without paying. Appellee further contends that a "pre-pay" system was available to appellant, which system would have prevented "drive offs" and "misidentifications." A pre-pay system requires that a customer first pay the station attendant for the amount of gasoline desired. The pump is then cleared so that only the amount of gasoline purchased by the customer may be pumped. Appellee, in essence, asserted that appellant had a duty to prevent "misidentifications," and that appellant's use of the particular gasoline pumping system which encouraged "drive offs" and caused "misidentifications," rather than the "pre-pay" system, constituted gross negligence.

A necessary element of a cause of action in negligence is some loss or damage to the plaintiff's legally protected interest as a result of the defendant's alleged breach of a legal duty. See *Lee Street Auto Sales v. Warren*, 102 Ga. App. 345, 347 (1) (116 SE2d 243) (1960). As

to his gross negligence claim, appellee neither alleged nor showed any injury or damage as the result of appellant's misidentification, other than his arrest and prosecution. " 'Different facts may be alleged, separately or cumulatively, to show the same wrong, and the number and variety of the facts alleged will not make more than one cause of action, so long as but one wrong is shown.' " *New York Life Ins. Co. v. Bradford*, 55 Ga. App. 248, 256 (189 SE 914) (1937). " '([F]rom) a single wrong but one cause of action can arise. So long as a plaintiff pleads but one wrong, he does not set up more than one cause of action.' [Cits.] . . . 'If there is substantial identity of wrong (which necessarily includes identity of the right violated), there is substantial identity of cause of action.' [Cits.]" *Ellis v. Kite*, 107 Ga. App. 237-238 (129 SE2d 547) (1963).

When one is injured as the result of a wrongful prosecution, the cause of action which arises is for malicious prosecution. OCGA § 51-7-40. Appellee's gross negligence claim in the instant case is no more than an attempt to create a claim for "negligent prosecution." The tort of malicious prosecution cannot be governed by the rules applicable to the tort of negligence. See generally *Stewart v. Williams*, 243 Ga. 580, 581 (255 SE2d 699) (1979), wherein the court held there is no tort of negligent false imprisonment. Instead of the elements of negligence, the law requires that one who alleges injury as the result of a prosecution must prove lack of probable cause, as well as malice. This is because "[m]alicious prosecution is an action which runs counter to obvious policies of the law in favor of encouraging proceedings against those who are apparently guilty. . . . It never has been regarded with any favor by the courts, and it is hedged with restrictions which make it very difficult to maintain." Prosser, Handbook of the Law of Torts, p. 841 (4th ed. 1979). See also *Price v. Cobb*, 63 Ga. App. 694 (11 SE2d 822) (1940).

Appellee set forth and proved a cause of action for malicious prosecution only. The trial court erred in denying appellant's motion for directed verdict as to appellee's gross negligence claim.

3. Following his arrest, appellee was administered two polygraph examinations, both of which were at his attorney's request. The first test was conducted by a private polygraph examiner, and the second was conducted by a member of the Georgia Bureau of Investigation (GBI). The results of the second test were admitted into evidence at appellee's committal hearing, following which the criminal charge against appellee was dropped.

Prior to the trial of the instant civil action, appellant made a motion in limine seeking to preclude the introduction of any evidence concerning the two polygraph examinations administered to appellee. The trial court ruled that the results of the tests were not admissible. However, it also ruled that the fact that appellee had taken the exam-

inations and the fact that the GBI examiner had testified at the committal hearing, would be admissible at trial. Appellant enumerates this ruling by the trial court as error.

The present rule in Georgia is that the results of polygraph examinations are not admissible into evidence, absent an express stipulation by the parties that they shall be admissible. *State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977). This rule applies to civil actions. See *King v. Masson*, 148 Ga. App. 229, 231 (2) (251 SE2d 107) (1978); *Wallace v. Moss*, 121 Ga. App. 366 (1) (174 SE2d 196) (1970). "This rule is based on the present scientific unreliability of such tests ([cit.]). . . ." *Stack v. State*, 234 Ga. 19, 21 (214 SE2d 514) (1975). With regard to evidence of the mere fact that a polygraph examination has been given, our Supreme Court has held as follows: " '[W]hile neither the results of a lie detector examination nor testimony which indirectly or inferentially apprises a jury of the results of a lie detector examination is admissible into evidence, the mere fact that the jury is apprised that a lie detector test was taken is not necessarily prejudicial *if* no inference as to the result is raised or *if* any inferences that might be raised as to the result are not prejudicial. *This determination should not, of course, encourage attempts to introduce evidence concerning lie detectors. As is clear . . . such evidence is liable to be prejudicial and should be admitted only when clearly relevant and unmistakably nonprejudicial.*' " (Emphasis supplied in part.) *Stack v. State*, supra at 23-24.

At the trial of the instant case, substantial evidence concerning both polygraph examinations administered to appellee was admitted into evidence. For example, after the jury had already been apprised that, following the committal hearing, the charge against appellee was dropped, the deposition of the GBI polygraph examiner was read into evidence. The deposition contained the examiner's testimony that he had been a witness at the committal hearing and had testified therein as to the results of the polygraph test he had administered to appellee. Appellant's motion for mistrial following the admission into evidence of this portion of the deposition was denied, but curative instructions were given to the jury. The reading of the GBI examiner's deposition continued, including testimony that, during the polygraph test, the examiner had asked appellee the following questions: "Do you know for sure who stole that gas? Did you steal that gas? Did you plan with anyone to steal that gas? And were you present when that gas was stolen?" The examiner then testified that appellee had answered "no" to all of these questions.

This and the other polygraph evidence clearly raised an inference as to the *results* of the tests. If a test were administered wherein appellee denied the criminal allegations and if the examiner testified at the committal hearing after which the charges were then dropped, the

only logical inference is that appellant "passed" the test. Moreover, we find that the inference as to the results was prejudicial to appellant. The substantial amount of evidence concerning the examinations and the repeated emphasis placed on these examinations may well have led the jury to the erroneous conclusion that appellee's innocence of the charge was conclusively *proved* by the tests. As previously discussed, the law of this state prohibits evidence of the results of the polygraph examinations because of their scientific unreliability. More importantly, the inference that appellee "passed" the polygraph examinations may have confused the jury as to the issue of whether there was probable cause to prosecute appellee. As noted in Division 1 of this opinion, in actions for malicious prosecution, the question is not whether the plaintiff was guilty, but whether the defendant had reasonable cause so to believe. The absence of such "reasonable belief" as to the guilt of a plaintiff is not necessarily established by evidence of his having "passed" a polygraph test.

Appellee contends that the polygraph evidence was nonetheless properly admitted to prove his necessary cost and experience in defending against the criminal charge brought against him. Assuming without deciding that the polygraph evidence was relevant to the question of appellee's damages, "[polygraph] evidence is liable to be prejudicial and should be admitted only when clearly relevant and unmistakably nonprejudicial." (Emphasis supplied.) *Stack v. State*, supra at 24. Having found that such polygraph evidence as was admitted in the instant case went beyond the mere establishment of the existence of such a test and that a clearly prejudicial inference as to the results thereof arose, the evidence was erroneously admitted. Under the circumstances, it is likely that the jury considered the polygraph evidence for improper purposes. See generally *Lynch v. Mid-America Fire &c. Ins. Co.*, 418 NE2d 421, 429 (11) (Ill. App. 1981); Anno., 88 ALR3d 227 (1978).

4. Appellant also enumerates as error the trial court's charge to the jury concerning damages. The trial court charged in pertinent part that "in a malicious prosecution action there is no exact measure of damages except the enlightened conscience of the jury. And the worldly circumstances of the parties and all of the attendant facts should be weighed in determining those damages." The court further charged that the jury should discriminate between actual damages and punitive damages, and that if there were compensatory damages, they were not confined to the plaintiff's actual loss but may include damages for accompanying mental pain and suffering. The trial court finally charged that "in a tort action in which there are aggravating circumstances in either the act or the intention the jury may give additional damages to deter the wrongdoer from repeating the trespass. Punitive damages, that is aggravated damages, may be authorized

when the circumstances of the wrong are such as to show an entire want of care and indifference to consequences." Appellant asserts that the trial court's instruction erroneously allowed for double recovery by appellee in that the jury was authorized to consider the worldly circumstances of the parties and also to award punitive damages under OCGA § 51-12-5.

Generally, the worldly circumstances of the parties may be considered by the jury only when the entire injury is to the peace, happiness, or feelings of the plaintiff. "In a tort action in which the entire injury is to the peace, happiness, or feelings of the plaintiff, no measure of damages can be prescribed except the enlightened consciences of impartial jurors. In such a case, the worldly circumstances of the parties, the amount of bad faith in the transaction, and all the attendant facts should be weighed. . . ." OCGA § 51-12-6. Where damages are recoverable under OCGA § 51-12-6, "[a]ny additional recovery under [OCGA § 51-12-5], would be a double recovery." *Westview Cemetery v. Blanchard*, 234 Ga. 540, 546 (216 SE2d 776) (1975). It is also clear that "[e]vidence of worldly circumstances is not admissible on the issue of punitive damages under [OCGA § 51-12-5]." *Bob Maddox Dodge, Inc., v. McKie*, 155 Ga. App. 263, 264 (3) (270 SE2d 690) (1980). See also *Hodges v. Youmans*, 129 Ga. App. 481, 486 (200 SE2d 157) (1973). Thus, if as a result of the charge in the instant case, the jury was allowed to compensate appellee for injury to peace, feelings or happiness (OCGA § 51-12-6) *and* also to award damages to deter the wrongdoer or compensate for wounded feelings (OCGA § 51-12-5), then the charge would be erroneous. Likewise, if the jury charge authorized the jury to consider evidence of worldly circumstances on the issue of punitive damages, the charge would be erroneous.

However, our review of the charge reveals that it violated neither of these rules. The jury was not instructed that it was authorized to award damages under both OCGA § 51-12-5 *and* § 51-12-6, because no charge on OCGA § 51-12-6 damages was ever given. Nor was the jury instructed to consider the worldly circumstances of the parties in the context of OCGA § 51-12-5 damages. Instead, the jury was instructed to consider the worldly circumstances of the parties in the context of the special damages which are recoverable in malicious prosecution cases. "Recovery in actions for malicious prosecution shall not be confined to the actual damage sustained by the accused but *shall be regulated by the circumstances of each case*." (Emphasis supplied.) OCGA § 51-7-47.

In *Coleman v. Allen*, 79 Ga. 637, 648 (6) (5 SE 204) (1887), the Supreme Court held that under OCGA § 51-7-47, evidence as to the pecuniary condition and worldly circumstances of the defendant is admissible. "Such evidence . . . is admissible in this class of actions,

where the very essence of the injury is that it proceeded from malice. We think that, under all the authorities, the pecuniary condition and worldly circumstances of the defendant may be received in evidence, to be considered by the jury, in this particular class of actions. . . ." See also *Simmons v. Edge*, 155 Ga. App. 6, 10 (4) (270 SE2d 457) (1980); *Gaddy v. Gilbert*, 140 Ga. App. 508, 509 (3) (231 SE2d 403) (1976); *Medoc Corp. v. Keel*, 166 Ga. App. 615, 618 (3) (305 SE2d 134) (1983).

Accordingly, the trial court did not err in charging the jury that it could consider the worldly circumstances of the parties in determining *compensatory* damages in a malicious prosecution action, and that it could also award damages to deter the wrongdoer under OCGA § 51-12-5. Compare *Theo v. Crawford*, 119 Ga. App. 81 (1) (166 SE2d 368) (1969) (malicious use of process); *Ga. R. & Banking Co. v. Benton*, 117 Ga. 785 (2) (45 SE 70) (1903) (wrongful expulsion from passenger-train). Under the charge as we have construed it, there was no erroneous allowance of a double recovery of damages under *both* OCGA § 51-12-5 and § 51-12-6. Rather, the charge authorized recovery of only compensatory damages in which the worldly circumstances was a factor and OCGA § 51-12-5 damages.

*Judgment reversed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED MARCH 7, 1985 —
REHEARINGS DENIED MARCH 21, 1985 AND MARCH 29, 1985 —

*Foy S. Horne, Jr., Gary B. Blasingame, David E. Barrett*, for appellant.
*Denny C. Galis*, for appellee.