A93A1096. ETHERIDGE v. CHARTER PEACHFORD HOSPITAL, INC. et al.
(436 SE2d 669)

BIRDSONG, Presiding Judge.

Linda Etheridge appeals the grant of summary judgment to defendants Charter Peachford Hospital, Inc., its chief medical officer, Dr. Steven R. Lee, and Dr. Fiameta Vargas in Etheridge's suit for false imprisonment and malicious arrest of her 12-year-old daughter.

Appellant claims that after she had her daughter voluntarily admitted to Charter Peachford for psychiatric evaluation, appellees improperly held the child longer than three days and failed to discharge her on appellant's request, and improperly tried to have the child involuntarily committed by juvenile court for continued psychiatric care. The child appeared to develop behavioral problems in fifth grade. School officials believed she was mentally disturbed and was a

danger to herself and others. Appellant disputes that conclusion but concedes that in March 1989, the child's teacher found a diary in which the child suggested she would kill herself and her teachers. She was also accused of bringing a knife to school. Department of Human Resources (DHR) counselors urged appellant to have the child evaluated at Charter Peachford.

Appellant contends she was verbally advised that the evaluation would take only three days. On March 29, 1989, appellant executed a voluntary commitment application form and a consent to treatment form. The child was admitted and appellee Vargas was assigned as her staff physician. Appellant contends that not until two days later did Dr. Vargas see the child or contact appellant. Finally on March 31, appellant called the hospital; she was told the child did not wish to speak to her and she was not allowed to see the child. Appellant demanded her release. On Saturday, April 1, Dr. Vargas told appellant the child needed to be in the hospital a little longer. Appellant went to the hospital to remove the child and executed a "Request for Discharge by Voluntary Patient." Appellant says she was told the child would be released within 72 hours of execution of this form, but she heard nothing until April 5, when Dr. Vargas told her that involuntary commitment proceedings were being initiated. On April 5, Dr. Vargas completed a Form 1021, authorizing retention for treatment. Another physician concurred in the Form 1021.

The Form 1021 was executed by appellee Lee as Chief Medical Officer (CMO). He started involuntary commitment proceedings in DeKalb Juvenile Court on April 5. The child was asked to acknowledge receipt of the petition but appellant was not served. She says she was unaware of the proceedings, but concedes she was told on April 5, that involuntary commitment proceedings had been initiated. After further efforts to get her child released, appellant filed a petition in Spalding Juvenile Court to have the child declared "deprived." On Monday, April 11, that court so found and commanded her release. A Spalding County deputy sheriff went to the hospital and threatened the employees, who released the child despite appellees' concerns for her mental state and their questions as to the jurisdiction of the Spalding County order. Appellees concluded the child suffered from major depression, dissociative and possible multiple personality disorders with a history of homicidal and suicidal ideation, and that she constituted a substantial risk of harm to herself and others.

Appellant does not enumerate that appellees acted in bad faith in making their conclusions as to the child's mental state. She contends the child was falsely imprisoned without process because appellees failed to comply with DHR regulations and held her after expiration of parental consent and pursuant to void or defective process; and that the child was maliciously arrested without process or with void

or defective process. Appellant urges error on the denial of her motion for summary judgment because appellees failed to comply with state law in filing the petition for involuntary commitment, rendering it void ab initio. *Held*:

1. The applicable law is OCGA § 37-3-20 et seq. (treatment for mental illness of voluntary patients). The parties seem to assume that later emendations of the Act apply, but the immunity given by OCGA § 37-3-4 to appellees if they acted in good faith in compliance with the law can be judged only under the law existing at the time of the events in 1989.

2. OCGA § 37-3-20 et seq., then and now, makes no provision for a three-day evaluation of a person voluntarily committed. No statutory provision clearly mandates a voluntarily committed patient's discharge within a certain time. Rather, OCGA § 37-3-20 provides that the CMO or his designees (see § 37-3-1 (1)) may receive a child for observation, by application of a parent, and "[i]f found to show evidence of mental illness and to be suitable for treatment, such person may be given care and treatment at such facility; and . . . may be detained . . . until discharged pursuant to Code Section 37-3-21 or 37-3-22." Code § 37-3-21 (a) provides: "*[I]n no event* shall any such patient be so discharged if, in the judgment of the [CMO], such discharge would be unsafe for the patient or others." (Emphasis supplied.) Thus, appellant's contention that she was entitled to have the child discharged within three days or on her request is contrary to law. The child was found to be a danger to herself and others and was properly held pursuant to OCGA §§ 37-3-21 (a) and 37-3-22. Appellees cannot be liable in tort for refusing to discharge her.

Appellant's contention that she was told the child would be kept only three days for evaluation does not control § 37-3-21 (a), nor does it vary the terms of the commitment papers she signed. See *My Fair Lady of Ga. v. Harris*, 185 Ga. App. 459, 460 (364 SE2d 580). Neither of the voluntary commitment forms promises discharge in three days or in any time period.

3. Failure to initiate involuntary commitment proceedings pursuant to § 37-3-21 (a) in a certain time or manner does not mandate or permit discharge of a voluntarily committed patient, since "*in no event*" may such a patient be discharged when the CMO has determined discharge would be unsafe for the patient or others. OCGA § 37-3-21 (a).

4. Appellant alleges that the child was falsely imprisoned or maliciously arrested because the involuntary commitment proceedings were defective or void. However, the child was detained because appellees were forbidden by OCGA § 37-3-21 (a) to release her, not because involuntary commitment proceedings had been initiated. Therefore, no defect in the involuntary commitment proceedings ren-

dered her continued detention unlawful.

As to actions for false imprisonment and malicious arrest, see *Barber v. H & H Muller Enterprises*, 197 Ga. App. 126, 129-130 (397 SE2d 563) and *Williams v. Smith*, 179 Ga. App. 712, 713-714 (348 SE2d 50). No cause of action can be maintained for any tort because the child was lawfully detained and there is no genuine issue of malice or bad faith.

5. As to the allegations that the petition for involuntary commitment was not properly constructed or filed, appellees are immune for good faith compliance with the law. OCGA § 37-3-21 (a) is uncertain as to whether §§ 37-3-41; 37-3-61; 37-3-81, or some DHR regulation applies to a patient voluntarily admitted when her release is found to be unsafe for herself or others. Appellant contends those three Code sections provide alternative procedures for involuntary commitment. However, Code §§ 37-3-41 and 37-3-61 seem not to apply at all. In 1986 the legislature added § 37-3-81 as a procedure for securing involuntary treatment of a voluntarily committed patient (Ga. L. 1986, pp. 1098, 1107, § 4), but in its opening language § 37-3-81 excludes patients voluntarily hospitalized under § 37-3-64 (a) (1) (A) (see Ga. L. 1986, pp. 1098, 1106, § 3), which in turn excludes from a mandatory five-day discharge requirement any patient "admitted as a voluntary patient under Code Section 37-3-20." We therefore agree with appellees that § 37-3-81 on its face applies to patients first hospitalized on an involuntary basis, not to patients first hospitalized voluntarily under § 37-3-20.

There appears to be no statutory provision for discharge of a voluntarily committed patient when the CMO determines such discharge would be unsafe to the patient or others. OCGA § 37-3-21 (a) provides that such patients shall *in no event* be discharged. DHR has enacted regulations which are as contradictory and inconclusive as the statutes themselves, so it cannot readily be determined which regulations apply. Therefore, it cannot be said that appellees acted in bad faith in failing to comply strictly with any requirements in seeking involuntary commitment, and they are entitled to immunity. OCGA § 37-3-4.

6. Assuming § 37-3-81 applies, the failure of Charter Peachford to serve appellant with the involuntary commitment petition, while having the 12-year-old child sign a receipt for service of the petition, is troublesome. However, this did not cause or authorize the child's detention, for the CMO had determined that her discharge would be unsafe to herself and others, and she could not be discharged. OCGA § 37-3-21 (a). The failure to serve appellant does not create an issue as to bad faith, because appellant concedes she was advised that such proceedings had been instigated and there is therefore no issue of intent to deceive her or to compromise her legal rights.

7. Since appellant, in contravention of § 37-3-21 (a), secured the child's release despite the CMO's determination that her discharge would be unsafe and before a hearing was held on the involuntary commitment petition, no compromise of her rights by appellees is shown, and no damage.

The child was detained under the voluntary commitment papers filed by appellant and as mandated by § 37-3-21 (a). Appellees complied in good faith with the law and were entitled to immunity for any liability asserted by appellant. Accordingly, the trial court did not err in granting summary judgment to appellees and in denying summary judgment to appellant.

*Judgments affirmed. Pope, C. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 16, 1993 —
RECONSIDERATION DENIED OCTOBER 7, 1993

*Mullins & Whalen, Samuel H. Sullivan, Newton M. Galloway,* for appellant.

*Freeman & Hawkins, Michael J. Goldman, Lisa A. Curia, King & Spalding, William E. Hoffmann, Jr., Anita E. Harton,* for appellees.