A09A1108. KRACHMAN v. RIDGEVIEW INSTITUTE, INC.

(687 SE2d 627)

MILLER, Chief Judge.

Monica Ann Krachman filed a complaint for false imprisonment against Ridgeview Institute, Inc., a Georgia corporation ("Ridgeview"); Denise Shipman, M.D.; Denise Shipman, M.D., Inc.; and Sandra Ann Diehl, M.D., claiming that the defendants unlawfully detained her at Ridgeview between July 9, 2006 and July 31, 2006. After Ridgeview filed a motion to dismiss or in the alternative for summary judgment, the trial court granted summary judgment in Ridgeview's favor by order dated November 24, 2008. Krachman now appeals, arguing that the trial court erred in concluding that Ridgeview was immune from liability under OCGA § 37-3-4 because, among other things, Ridgeview is not within the ambit of the statute. We agree and further conclude that material issues of fact exist as to the viability of Krachman's false imprisonment claim against Ridgeview. Accordingly, we reverse.[1]

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

---

[1] Drs. Shipman and Diehl also filed a motion to dismiss or in the alternative for summary judgment. Krachman thereafter voluntarily dismissed Dr. Diehl. The trial court granted Dr. Shipman's motion to dismiss based on Krachman's failure to comply with OCGA § 9-11-9.1 and further concluded that Dr. Shipman would be entitled to summary judgment in any event. This portion of the trial court's November 24 order is not at issue on appeal.

YALE LAW LIBRARY

The record shows that on July 9, 2006, Krachman, who was approximately 17 weeks pregnant, was admitted to Ridgeview on a voluntary basis to obtain mental health treatment. Prior to her admission, Krachman signed Ridgeview's "Agreements and Conditions of Voluntary Admission" form, which provided:

> I understand that I may request discharge at any time. . . . The request for discharge must be in writing and the form may be obtained from the staff. *Within three days (not counting Sundays and legal holidays) after the Medical Director, or a physician who has been designated by the Medical Director to make discharge decisions, gets my written request, I will be discharged unless that physician determines, after consideration of the recommendations of the treatment team, that my discharge would be unsafe to me or others.* If I am not released, the process for involuntary hospitalization will begin. If this happens, I will be told of my rights.

(Emphasis in original.) Ridgeview also provided Krachman with a statement of Patient Rights and Responsibilities, which included the right "to request discharge in writing any time after admission if an adult patient, and to be assisted to put verbal request in writing within 24 hours."

Dr. Shipman was Krachman's treating psychiatrist at Ridgeview. Dr. Shipman's July 9, 2006 admitting note stated: "Hospitalization is necessary as the patient is having depression, severe agitation, and suicidal thoughts. In addition, over the last two days, she has jumped out of a moving car twice." Subsequently, Dr. Shipman documented Krachman's status in her progress notes based on interviews with Krachman. Dr. Shipman's progress notes from July 12, 2006 and July 18, 2006 described Krachman as agitated, anxious, and depressed. On July 24, 2006, Dr. Shipman reported that Krachman told her: "I want to go home, but I can't. I feel so not ready to go home. I'm scared. I can't function here. How am I going to function at home?" According to Dr. Shipman's July 24 notes, Krachman reported telling her husband that she would not go home with him because she was scared. Further, Dr. Shipman wrote that Krachman "could not discuss, this evening, what she could do at home if she was discharged." Dr. Shipman's notes from July 25, 2006 reflect that Krachman told Dr. Shipman she was not getting better and was having "bad thoughts. What if I do something to hurt my [two-year-old son] or hurt myself?" On July 26, 2006, Dr. Shipman stated that Krachman continued to express fear of going home, stating, "I can't do it," and remained fearful of harming her son or herself.

On July 27, 2006, Dr. Diehl interviewed Krachman to provide a second opinion. Dr. Diehl concluded that "I would not discharge [Krachman] to home at this time," and "would highly recommend consulting with a tertiary care facility . . . and consider a transfer. . . ." On July 31, 2006, Krachman was transferred to the care of the Director of the Pregnancy and Postpartum Mood Disorders Program at Emory University.

In an affidavit filed in opposition to Ridgeview's motion, Krachman denied that she had ever jumped out of a moving car or threatened to harm herself or her children; that she had told her husband on July 24 or at any other time that she would not go home with him because she was scared; or that she had told Dr. Shipman, "I can't do it," when discussing discharge on July 26. Krachman contended that she "made numerous and repeated verbal requests to be discharged, released, or otherwise go home from [Ridgeview]," pointing to, inter alia, an adult inpatient daily inventory, dated July 16, 2006, stating: "[Patient] states that she wants to be release[d] and that she feels very anxious[ ]"; another daily inventory dated July 17, 2006, stating: "[Patient] reports throughout the evening that she wants to get out of here"; and a treatment plan update dated July 18, 2006, stating: "[Patient] reports that she wants to leave."

Krachman claimed that on July 23, 2006, a Ridgeview employee accompanied her to a Cobb County emergency room, where Krachman was evaluated for abdominal pain, and thereafter, prevented Krachman from leaving with her husband. Krachman stated that she told her husband, in tears, that she could not go home with him because she was "scared" of what Ridgeview would do to her. In a subsequent affidavit, Krachman asserted that on several occasions she attempted to leave Ridgeview with her husband after visiting hours, but Ridgeview employees prevented her from doing so.

1. Krachman contends that the trial court erred in granting summary judgment for Ridgeview under the immunity provisions of OCGA § 37-3-4, arguing that Ridgeview is not within the ambit of the statute. We agree.

Krachman's complaint alleges that Ridgeview is liable for the "conduct, acts and omissions" of its employees. Krachman concedes that she was lawfully admitted to Ridgeview as a voluntary patient pursuant to OCGA § 37-3-20 (a), but contends that she was unlawfully detained after Ridgeview staff members failed to adhere to the discharge procedures in OCGA § 37-3-22 (a).

OCGA § 37-3-4 provides:

> Any physician, psychologist, peace officer, attorney, or health official, or any hospital official, agent, or other person

YALE LAW LIBRARY

employed by a private hospital or at a facility operated by the state, by a political subdivision of the state, or by a hospital authority created pursuant to Article 4 of Chapter 7 of Title 31, who acts in good faith in compliance with the admission and discharge provisions of this chapter shall be immune from civil or criminal liability for his actions in connection with the admission of a patient to a facility or the discharge of a patient from a facility.

Krachman argues that even if Ridgeview's staff members are entitled to immunity under the statute, Ridgeview is not. In construing OCGA § 37-3-4, we apply "[t]he fundamental rules of statutory construction [which] require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Citations and punctuation omitted.) *Blue Moon Cycle v. Jenkins*, 281 Ga. 863, 864 (642 SE2d 637) (2007). "At the same time, we must seek to effectuate the intent of the legislature." (Citations and punctuation omitted.) *Currid v. DeKalb State Court Probation Dept.*, 285 Ga. 184, 187 (674 SE2d 894) (2009). The plain language of the statute extends immunity only to designated individuals and does not evidence a legislative intent to confer immunity on hospitals or other mental health facilities, such as Ridgeview. Had the General Assembly intended to include hospitals or mental health facilities within the ambit of the statute, it could have done so expressly. Compare OCGA § 31-8-44 (extending immunity to hospitals and their agents and employees providing emergency services to pregnant women in labor).

Krachman argues persuasively that under the Supreme Court of Georgia's opinion in *Gilbert v. Richardson*, 264 Ga. 744 (452 SE2d 476) (1994), Ridgeview is not entitled to avail itself of OCGA § 37-3-4 by virtue of the fact that she is suing Ridgeview under a respondeat superior theory of liability. In *Gilbert*, our Supreme Court recognized that "[u]nder the doctrine of respondeat superior, a principal has no defense based on an agent's immunity from civil liability for an act committed in the course of employment." (Citation omitted.) Id. at 753-754 (7). This rule, which had been applied in some of this Court's prior cases involving common law immunities, stems from the principle that "[i]mmunities, unlike privileges, are not delegable and are available as a defense only to persons who have them. . . ." (Punctuation omitted.) Id. at 754 (7), citing Restatement (Second) of Agency, § 217 (b) (ii) (1958). In *Gilbert*, the Supreme Court applied the rule to hold that the official immunity conferred by the State Constitution on public officers and employees "does not protect a governmental entity from liability under the doctrine of respondeat

superior." Id. Subsequently, we extended this rule to a nongovernmental entity in *Stephens v. Conyers Apostolic Church*, 243 Ga. App. 170, 170-171 (1) (532 SE2d 728) (2000), in which we held that a church could be liable for its employee's negligence notwithstanding the employee's immunity under OCGA § 51-1-20 (a).

Ridgeview does not attempt to distinguish *Gilbert* but instead urges us to follow our prior decision in *Poss v. Dept. of Human Resources*, 206 Ga. App. 890, 891-893 (1) (426 SE2d 635) (1992) ("*Poss I*"), overruled on other grounds, *Ga. Dept. of Human Resources v. Poss*, 263 Ga. 347 (434 SE2d 488) (1993), in which we held that the plaintiff could not pursue a claim against a Georgia Department of Human Resources hospital based on a respondeat superior theory when the doctor whose conduct the plaintiff sought to impute to the hospital was immune from liability under OCGA § 37-3-4.[2] *Poss I* is plainly in conflict with *Gilbert*, as above, and must be and is hereby further overruled.

In view of *Gilbert* and *Stephens*, and in the absence of any indication in the plain text of the statute that a hospital or other facility, whether governmental or private, may invoke the immunity provided under OCGA § 37-3-4, we agree with Krachman that the trial court erred in granting summary judgment for Ridgeview under OCGA § 37-3-4.

2. We also conclude that material issues of fact exist as to Krachman's claim for false imprisonment against Ridgeview which must be submitted to a jury for determination.

"The essential elements of the cause of action for false imprisonment are a detention of the person of another for any length of time, and the unlawfulness of that detention." (Citation and punctuation omitted.) *Mitchell v. Lowe's Home Centers*, 234 Ga. App. 339, 340 (1) (506 SE2d 381) (1998). This Court has previously held that a claim for false imprisonment exists when a patient's detention at a mental health facility "is not evidenced by some form of objective compliance . . . with all applicable procedural process requirements." (Citation and punctuation omitted.) *Heath v. Peachtree Parkwood Hosp.*, 200 Ga. App. 118, 119 (2) (407 SE2d 406) (1991). The pertinent procedures in this case are as follows:

> A voluntary patient . . . may request . . . discharge in writing at any time after his admission. . . . The request for discharge may be submitted to the chief medical officer or to

YALE LAW LIBRARY

---

[2] Ridgeview also relies on *Etheridge v. Charter Peachford Hosp.*, 210 Ga. App. 482, 485 (5) (436 SE2d 669) (1993). In *Etheridge*, as in *Poss I*, this Court extended immunity under OCGA § 37-3-4 to the nongovernmental hospital at issue. Id. Given *Gilbert* and this opinion, *Etheridge* must be and is hereby overruled as well.

any staff physician or staff psychologist or staff registered nurse of the facility for transmittal to the chief medical officer. If the patient . . . makes an oral request for release to any member of the staff or other service provider, the patient must within 24 hours be given assistance in preparing a written request. The person to whom a written request is submitted shall deliver the request to the chief medical officer within 24 hours, Saturdays, Sundays, and legal holidays excluded. Within 72 hours, excluding Sundays and legal holidays, of the delivery of a written request for release to the chief medical officer, the patient must be discharged from the facility, unless the chief medical officer finds that the discharge would be unsafe for the patient or others, in which case proceedings for involuntary treatment must be initiated under either Code Section 37-3-41, Code Section 37-3-61, or Code Section 37-3-81.

OCGA § 37-3-22 (a).

Here, as the trial court found, there is evidence that Krachman orally expressed her "desire to be 'released,' 'to get out of here,' and to 'leave' to [Ridgeview] staff members. . . ." Ridgeview's claims to the contrary notwithstanding, Krachman, by her affidavit, points to such comments as reflected in her patient records as evidence that she made "numerous and repeated verbal requests" for discharge from Ridgeview.

Given the foregoing, jury questions remain as to whether Ridgeview has demonstrated its "objective compliance" with the discharge procedures of OCGA § 37-3-22 (a); *Heath*, supra, 200 Ga. App. at 119 (2).

For the reasons set forth above, we reverse the portion of the trial court's November 24, 2008 order granting summary judgment in favor of Ridgeview on Krachman's false imprisonment claim.

*Judgment reversed. Andrews, P. J., Johnson, P. J., Blackburn, P. J., Smith, P. J., Barnes, Ellington, Phipps, Mikell, Adams, Bernes, and Doyle, JJ., concur.*

DECIDED DECEMBER 1, 2009.

*Gary P. Bunch*, for appellant.
*Carlock, Copeland & Stair, Wade K. Copeland, Insley & Race, Brynda R. Insley, Aynsley M. Harrow*, for appellee.